PAUL KADAIR, INC., d/b/a Paul Kadair's Home & Commercial Audio, Plaintiff-Appellant,

v.

SONY CORPORATION OF AMERICA, et al., Defendants-Appellees.

No. 80–3972.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1983.

Henry L. Klein, New Orleans, La., for plaintiff-appellant.

Bernus Wm. Fischman, Lackshin & Nathan, Houston, Tex., for L.J. Paul & Associates.

Fenwick, Stone, Davis & West, Edmond C. Gregorian, Richard E. Levine, Palo Alto, Cal., for U.S. Pioneer Electronics.

Michael O'Keefe, Benjamin R. Slater, Jr., New Orleans, La., Hoken S. Seki, Chicago, Ill., for Melco Sales, Inc.

Richard B. Nevils, Baton Rouge, La., for Kadair's Sight & Sounds, Inc.

Chaffe, McCall, Phillips, Toler & Sarpy, Corinne Ann Morrison, New Orleans, La., for Dahlquist, Inc. & Tobias & Co.

Adams & Reese, Sam A. LeBlanc, III, New Orleans, La., for Bang & Olufsen of America.

Rosenmann, Colin, Freund, Lewis & Cohen, Marc Rowin, Asa D. Sokolow, New York City, Wallace A. Hunter, Baton Rouge, La., for Sony of America.

Dyer & Funderburk, Robert C. Funderburk, Baton Rouge, La., for Art Colley's Audio.

Breazeale, Sachse & Wilson, Gordon A. Pugh, Baton Rouge, La., for Marantz, Inc. and Superscope, Inc.

Phelps, Dunbar, Marks, Claverie & Sims, Rutledge C. Clement, Jr., Margaret Ann Brown, New Orleans, La., for U.S. Pioneer Electronics Corp.

Taylor, Porter, Brooks & Phillips, Fredrick R. Tulley, Baton Rouge, La., for Dobbs-Stanford & Yamaha Intern. Corp.

Hillis, Phillips, Cairncross, Clark & Martin, Mark S. Clark, Seattle, Wash., for Ogden Park, Phase Linear, Bose Corp.

Sanders, Downing, Kean & Cazedessu, William R. D'Armond, George K. Anding, Jr., Baton Rouge, La., for Mill-Tronics, Miller & Assoc., Inc. and Plessey, Inc.

Stone, Pigman, Walther, Wittmann & Hutchinson, Phillip A. Wittmann, James C. Gulotta, Jr., New Orleans, La., for Kenwood Electronics.

Jack C. Benjamin, New Orleans, La., for McIntosch Laboratory, Inc.

Cooper & Thompson, Baton Rouge, La., Gerald E. Fogerty, New York City, for Thorens Corp., and Elpa Marketing.

McCollister, McCleary, Fazio, Mixon & Holliday, Neil H. Mixon, Jr., Baton Rouge, La., for Crown Intern.

Before GARZA, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

The issue presented by this appeal is a narrow, yet difficult one given the peculiar posture and particular facts of the case as developed in the court below. Specifically: did the district court abuse its discretion in denying appellant's request for discovery, pursuant to Fed.R.Civ.P. 56(f) affidavits, on the ground of dilatoriness, followed by the dismissal of appellant's conclusory complaint under Section 1 of the Sherman Act, 15 U.S.C. § 1, alleging an unlawful concerted refusal to deal. Although a partial stay of discovery was in effect for all but one month of the proceedings below, we do not find this fact to signal an abuse of discretion in light of four factors: (1) the limited nature of the stay, (2) the district court's orders concerning discovery during the litigation, (3) appellant's repeated inability to provide both specific facts in its complaint and to frame focused discovery requests in its Rule 56(f) affidavits, and (4) appellant's failure to seek any meaningful discovery for more than a year after filing its complaint.

### Proceedings Below

Appellant Paul Kadair, Inc., a stereo retailer, filed this antitrust action on March 2, 1978 against a total of over forty manufacturers, manufacturers' representatives/distributors and retailers of stereo equipment.[1]

1. Because some defendants were named in the caption of Kadair's complaint but not in the body, and vice versa, and because some defendants were dismissed from the suit shortly after the complaint was filed, it is difficult to derive an exact head count of the defendants in this action. The court below listed the following 41 manufacturers, manufacturers' representatives/distributors and retailers of stereo equipment as defendants. The 21 manufacturers listed as defendants were Tandberg of America, Inc., Advent, Inc., Scientific Audio Electronics, Inc., Phillips Hi-Fi, Inc., Klipsch and Associates, Inc., Bozak, Inc., McIntosh Laboratory, Inc., Thorens Corporation of America, Sony Corporation of America, Bang and Olufsen of America, Inc., Crown International, Inc., Kenwood Electronics, Inc., Altec Corporation, Phase Linear Corporation, Bose Corporation, Plessey, Inc., Superscope, Inc., Marantz Company, Inc., Dahlquist, Inc., U.S. Pioneer Electronics Corporation, and Yamaha International Corporation. The following 14 manufacturers' representatives/distributors were listed as defendants: Corenswet, Inc., AFCO Electronic Sales Corporation, Texport Sales Company, Sullivan and Associates, Inc., Elpa Marketing Industries, Inc., Charles Lucas Sales Company, Wyborney Sales Company, Al Maskau and Associates, Inc., Rep-Tech, Inc., Melco Sales, Inc., Miller & Associates, Inc., L.J. Paul & Associates, Inc., Tobias and Company, and Dobbs-Stanford of Texas Corporation. The six retailers named were: H.J. Wilson, Inc., Savard Sound System, Inc., New Generation, Inc., Kadair's, Inc., Art Colley's Audio Specialties, Inc., and Ogden Park Record Shop, Inc.

A number of the above parties were dismissed as defendants in the suit, prior to the district court's grant of summary judgment which is the subject of this appeal. No issue is taken with these prior dismissals: Tandberg of America, Inc., Advent Inc., Scientific Audio Electronics, Inc., Phillips Hi-Fi, Inc., Klipsch and Associates, Inc., Corenswet, Inc., AFCO Electronic Sales Corporation, Texport Sales Company, Sullivan and Associates, Inc., H.J. Wilson, Inc., Savard Sound System, Inc., and New Generation, Inc.

Appellant alleged that the above defendants had engaged in a conspiracy, in violation of Section 1 of the Sherman Act, pursuant to which defendant manufacturers refused to sell their products to appellant.[2] 15 U.S.C. § 1. After twice amending its complaint, pursuant to district court order, appellant remained unable to plead any specific facts tending to support its conclusion of conspiracy as alleged.

Defendant-appellees on November 30, 1978, renewed previously-made motions and also made new motions to dismiss or for summary judgment pursuant to Fed.R. Civ.P. 56(e)[3] against the Second Amended Complaint. These motions addressed the legal sufficiency of the complaint and alleged that appellant failed to comply with the court's orders to plead specific facts concerning the alleged conspiracy. Some defendant-appellees submitted affidavits denying participation in the alleged conspiracy to boycott: the defendant manufacturers and distributors who were manufacturers' representatives averred that any refusals to deal with appellant were unilateral decisions made for independent business reasons, including the plaintiff's poor credit status, plaintiff's failure to complete or submit required applications, the poor appearance of plaintiff's store, and adequate sales representation of defendant's products by other retailers. Others submitted affidavits pointing out that they had in fact sold products to appellant,[4] while others noted that they had dealt with and then terminated business dealings with the alleged instigator of the boycott, Kadair's, Inc.[5]

In opposition to these motions, in January, 1979, appellant submitted a Fed.R. Civ.P. 56(f) affidavit[6] which did not come

---

**2.** Other antitrust violations were alleged in the complaint but were later voluntarily withdrawn: 1) monopolization of the Baton Rouge high quality, sophisticated home electronic audio equipment market, in violation of § 2 of the Sherman Act, 15 U.S.C. § 2, 2) tying of undesirable purchases to the sale of more desirable products, as prohibited by § 3 of the Clayton Act, 15 U.S.C. § 14; and 3) price discrimination in violation of § 2 of the Robinson-Patman Act, 15 U.S.C. § 13. The latter two allegations of impermissible tying and price discrimination were levied against a limited number of defendants.

**3.** Rule 56(e) provides:
   (e) **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

**4.** Defendant Ogden Park averred that appellant carried the Phillips line of stereo products (Phillips having been named as a defendant in the caption of the original complaint, although omitted from the body) and had advertised itself as having the "[l]argest inventory and selection" of audio equipment in Baton Rouge.

**5.** Appellant's principal and owner, Paul Kadair, had been employed by his uncle's company, defendant Kadair's, Inc., before he began his own company. Apparently, some sort of family feud erupted occasioning a parting of the ways between Paul Kadair and his clan. This ill will allegedly inspired the boycott herein complained of, with Kadair's, Inc. as the instigator.

**6.** Rule 56(f) provides:
   (f) **When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
Appellant's affidavit, in its entirety, stated:
   Paul Kadair, Inc., d/b/a Paul Kadair's Home and Commercial Audio, is unable as of present to present certain facts by affidavit which can be utilized to oppose the affidavits submitted on behalf of the various defendants for the following reasons:
   1. Plaintiff has not had the opportunity to discover the market performance of the manufacturers' products in order to properly evaluate whether or not defendant manufacturers and manufacturers' representatives acted contrary to their economic interests;

to the court's attention until an April 27th hearing on appellees' motions.[7] At the April 27th hearing appellant's counsel admitted the lack of specific evidence of conspiracy,[8] and sought a continuance to seek discovery in order to gather such evidence. In response to the court's invitation to submit additional material by May 4, 1978, appellant filed a supplemental Rule 56(f)

> 2. Plaintiff has not had the opportunity to discover the criteria and standards utilized by the defendant manufacturers and manufacturers' representatives in determining the following: (a) credit-worthiness of a prospective franchisee; (b) suitable business acumen of a prospective franchisee; (c) the required type of business premises for the granting of a franchise to a prospective franchisee.

7. Apparently, appellant attached the affidavit to a brief which was not part of the record, rather than file it in the record. Appellant did not otherwise call the court's attention to its submission. In any event, it is clear that this affidavit was not noticed by the court until the April 27th hearing on appellees' motions.

8. The transcript of the April 27th hearing reveals the following exchanges between the court and appellant's counsel:

THE COURT: What evidence do you have now?

MR. KLEIN: I have no evidence.

THE COURT: Of conspiracy, other than what you think may have happened?

MR. KLEIN: No evidence. I remember saying that at the meeting,—I don't know—the October meeting or whenever it was when we met in the large courtroom, I told your Honor at this present time I have no evidence other than the fact that we had uniform refusals to deal by the majority of the major manufacturers to a retailer who had acumen despite the fact that the affidavits say they weren't so sure that he was a good—that he knew how to handle the products and despite the fact that he had creditworthiness at the time, and despite all of these facts. And from that, we drew the conclusion and I think we must draw some conclusions. If we had not said this is a conspiracy, the motion to dismiss would be failure to state a claim.

\* \* \* \* \* \*

THE COURT: Before you tell me what you're going to do, tell me what you are doing. Is there in the record significant probative evidence, as the Courts have used that term to overcome the affidavits that the defendants have already filed? I'm talking about the defendant manufacturers now?

MR. KLEIN: I understand.

THE COURT: Is there enough in there where I can infer the existence of the conspiracy as compared to no conspiracy?

affidavit claiming the need for discovery since knowledge and control of the facts underlying the conspiracy claim were largely in the hands of defendants, appellant had been unable to obtain information by means of personal interviews, and it had no other means of refuting appellees' allegations as made in their affidavits filed pursuant to Rule 56(e).[9]

MR. KLEIN: Well, no, I think as the record presently stands, I think it is fair to say that we have said we have been refused to deal and we're suspicious that the refusal was not unilateral. And the defendants have come forth and said, "Oh, no, no. They're unilateral. We did it all by ourselves. We didn't meet, conspire or deal with anyone and we deny the conspiracy." . . . So I think that as the present record stands, if your Honor does not allow me discovery on the areas which we have set forth in our affidavit which we talked about in the briefs, I don't know—I don't know that I could reverse you quite as easily. I'd have a tougher time.

Appellant's counsel thus recognized that absent the fact of appellees' allegedly parallel behavior, and the reasonable inferences which might be drawn therefrom, appellant offered no facts in support of its allegations of conspiracy. In accordance with our discussion, *see* note 27 *infra,* we agree with the district court that appellant's conclusory allegations of conspiracy and of appellees' parallel behavior were insufficient to withstand the motions for summary judgment, which were supported by uncontroverted Rule 56(e) affidavits, averring facts to the contrary.

9. The additional averments included therein were:

IV.

Paul Kadair, Inc. is desirous of, and is entitled to, take discovery in the form of oral depositions and written interrogatories of each person or entity making an affidavit in support of the various motions filed herein.

V.

Paul Kadair, Inc. has no other way of effectively cross-examining and/or refuting the allegations made by the various affiants who filed affidavits in support of the pending motions for summary judgment.

VI.

The knowledge and control of the facts relating to (i) denials of conspiracy, (ii) the reasons for refusing to deal and (iii) the interchange of information about my efforts to obtain a representative cross-section of merchandise is largely within the moving parties themselves.

VII.

Thereafter, by order dated July 6, 1979, the court stated that it did "not believe there is sufficient evidence in the record to make a determination of whether the plaintiff should be allowed additional time to take depositions or file affidavits in opposition to defendants' motions." It ordered appellant to submit specific information concerning the discovery requested.[10] In response to the court's order, appellant requested on August 6, 1979, that it be permitted to depose fifteen named individuals, associated with twelve of the defendants, concerning:

a) the nature of the Baton Rouge retail home stereo equipment market; b) the relationships between the manufacturer's representatives and the retailers in the Baton Rouge area; c) the requirements set by the manufacturer's representatives in determining whether or not a retailer is capable of distributing a manufacturer's product; d) the methods utilized by the manufacturer's representatives in evaluating an applicant/retailer's ability to adequately market a manufacturer's product; and e) the nature of communications and contacts between the manufacturer's representative and the manufacturer which it represents and the retailers in the Baton Rouge market.

Appellant also sought permission to serve interrogatories upon the manufacturers and manufacturers' representatives, concerning the nature, type and kind of agreements existing within each manufacturer's distribution scheme and the identity and business qualifications of various members of that scheme.[11] Finally, appellant submitted a

---

Paul Kadair, Inc. has been unable to obtain information by personally questioning the various manufacturers' representatives or retailers and have been rebuffed, side-tracked and ignored when attempting to obtain information relative to the refusals. The only *effective* way to examine the issues of conspiracy and obtain information known to the defendants is through an orderly discovery procedure in this litigation.

10. The information requested by the court included:

(1) The name of each person whose deposition is to be taken, the motion or motions in which the deposition is to be used, and the nature of the testimony sought to be elicited from the deponent.

(2) The names of persons whose affidavits shall be obtained, the motion or motions in which the deposition is to be used, and the nature of the information to be set forth in the affidavit.

(3) The nature of any other discovery to be undertaken, and the purpose for which it is to be used.

(4) The reason why the discovery now being requested was not requested earlier.

11. Specifically, appellant sought:

a) Written interrogatories propounded to each of the defendant manufacturers and manufacturer's representatives concerning the nature, type and kind of agreements between the defendant manufacturers and the manufacturer's representatives regarding distribution of the manufacturer's products in the Baton Rouge area;

b) Written interrogatories to the defendant manufacturers concerning the nature, type and kind of agreements between them and their retail distributors in the Baton Rouge area;

c) Written interrogatories to the defendant manufacturers concerning: (i) the criteria and requirements set by the manufacturers to which a retailer must conform in order to obtain a manufacturer's product; and (ii) the type of limitations and/or restrictions inherent in the defendant manufacturer's distribution system.

In this context inquiries will also be made into the role played by the manufacturer's representatives in determining whether or not an applicant/retailer is qualified to distribute a manufacturer's product.

d) Written interrogatories to the defendant manufacturers and the defendant manufacturer's representatives concerning the methods utilized by the manufacturer's representatives in evaluating a retailer's ability to adequately market a manufacturer's product;

e) Written interrogatories to each of the defendants concerning the method and nature of communications in the Baton Rouge area regarding and relating to the marketing and distribution of a manufacturer's product on the retail level in the Baton Rouge area, between: 1) the manufacturer and its retailer(s); 2) the manufacturer and its manufacturer's representative(s); and 3) the manufacturer's representative and the retailer.

\* \* \* \* \* \*

h) Written interrogatories to each of the defendant manufacturers requesting the following information from 1974 to the present: 1) the identity of the manufacturer's representative for each of the above years; 2) the name of each of the retailers of the manufacturer's products in the Baton Rouge area for each of the years set forth above; 3) a de-

document production request for information as to the manufacturers' marketing goals and yearly sales.

Appellant averred that its interrogatory and document requests were

designed to meet the motions by the manufacturers, manufacturer's representatives, and retailers in which they claim that: (i) no non-business discrimination was exercised in their discretionary action; (ii) plaintiff was unqualified to distribute the manufacturer's products; and (iii) that there were other qualified and capable retailers in the area which also met the marketing requirements of a manufacturer.

Appellant explained that these requests were not made earlier as "the Court had ruled out all discovery up until motions for summary judgments were presented." [12]

Appellees objected to appellant's proposed discovery. At this time, the court took the matter under advisement. Subsequently, the court granted appellees' motions for summary judgment, simultaneously denying appellant's request for discovery.[13]

The district court relied upon the following findings and reasoning in granting appellees' motions: (1) appellees' moving affidavits demonstrated that their decisions not to deal with plaintiff, if made at all, were made unilaterally;[14] (2) appellant's opposing affidavits failed to either controvert appellees' affidavits or present any significant probative evidence of conspiracy;[15] (3) appellant admitted that it had no evidence of a conspiracy;[16] and (4) unilateral refusals to deal were not violative of the Sherman Act, citing *United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919) and its progeny. The court also elaborated upon its refusal to exercise its discretion to grant appellant Rule 56(f) discovery on the grounds that appellant had been dilatory in requesting discovery, had failed to comply with the court's orders, and because the discovery sought amounted to a "fishing expedition":

In exercising the discretion afforded to this Court in denying plaintiff's Rule 56(f) request, the Court concludes that: (1) the plaintiff has failed to make a timely request for discovery in that he has not, at any point in these proceedings, initiated any means of discovery or re-

---

scription of the business qualifications of each of the retailers listed above; and 4) in what manner each retailer met the criteria and the qualifications required.

12. At the prior hearing, on April 27, 1979, appellant's counsel had characterized the court's position on discovery, alternatively, as either prohibiting only generalized discovery or as a blanket prohibition, the latter as averred in the August 6th affidavit. At this hearing, as in the affidavit, appellant relied upon its interpretation of the court's position with regard to discovery in explanation of its delay. Appellant's counsel specifically denied that his workload had contributed to the delay. At oral argument before this Court, however, appellant's counsel stressed the fact that he had been kept so busy during the course of the litigation that he could not reasonably have undertaken any discovery—pursuant to the Federal Rules or otherwise—prior to the time that he did.

13. Approximately one year elapsed before the submitted matter was decided by the court.

District Judge Polozola initially supervised this action as a United States Magistrate. Upon his appointment as a district judge, the case was transferred to him in his new capaci-

ty. The parties were so informed in August 1980, and Judge Polozola's decision was handed down on October 31, 1980. 88 F.R.D. 280.

14. The court recognized:

The affidavits filed by the defendants in support of their individual motions for summary judgment clearly state that the defendants' refusal to deal with the plaintiff were unilateral decisions based on various reasons other than a concerted conspiracy. Each of the defendants' reasons for refusing to deal with the plaintiff are set forth in the affidavits filed in the record of this case.

15. The court stated:

In response to the motions filed herein, the plaintiff has filed an identical affidavit as to each defendant wherein the plaintiff infers that a conspiracy exists. The plaintiff has not set forth any specific allegations which would in any way support his contention that the defendants conspired together in a concerted effort to refuse to deal with the plaintiff.

16. *See* note 8 and the accompanying discussion *supra.*

quested that the Court allow him to obtain any relevant information or significant probative evidence;

(2) despite two court orders and at least one extension of time, the plaintiff has failed to fully and properly amend his complaint so as to allege specific facts tending to show the existence of antitrust violations;

(3) a continuance pursuant to Rule 56(f) in order to allow discovery would be nothing more than an abuse of the purpose of the rule. Since the plaintiff has failed to set forth specific requests for discovery, despite an order to do so, the Court will not sanction a proverbial fishing expedition designed to grasp at whatever may be uncovered by such unfettered discovery practices.

We can perceive no possible error in the district court's findings of fact or conclusions of law [17] but for the question of its denial of appellant's Rule 56(f) discovery request. After careful examination of the record below in regard to the issue of discovery, we find that the district court did not abuse its discretion in denying appellant's request. We set out in detail the

specific discovery posture of the case prior to the district court's grant of summary judgment before turning to a discussion of the district court's ruling.

### Discovery Chronology

Appellant filed its original complaint on March 2, 1978. It was twice amended, pursuant to court orders shortly before the amendments, on July 7, 1978, and September 29, 1978. Both court orders for further amendment stressed appellant's failure to allege specific facts tending to show a conspiracy among the named defendants. The court, in its second order, recognized that "while ... the plaintiff has not had an opportunity to fully develop his case through discovery, the plaintiff cannot rely on broad general statements as was done in the amended complaint, particularly in regard to the allegations pertaining to the retailers and the relationship between the manufacturers' representatives and the manufacturers." [18]

Approximately one month after the filing of the initial complaint, on April 12, 1978, the district court, *sua sponte,* stayed all discovery pending a status conference

---

**17.** The district court, for example, correctly observed that unilateral refusals to deal do not violate the federal antitrust laws. *See* note 27 *infra.*

**18.** As we discuss *infra,* we find that these orders provided notice to appellant that discovery could and should have been undertaken. In addition to its rather detailed directions with regard to the complaint's inadequacies, the court discussed the summary judgment motions already made by some defendants, withheld a ruling on the motions, and invited resubmission in accordance with Fed.R.Civ.P. 56 pursuant to a timetable set out therein commencing with appellant's filing of his second amended complaint.

Appellant cites the court's recognition in the second order that "plaintiff has not had an opportunity to fully develop his case through discovery" as erroneous—inasmuch as no discovery had been undertaken—and as an admission of sorts—that it was not provided an adequate opportunity for discovery. We disagree with the appellant's proffered interpretation of the district court's observation. When the comment is read in context, it is clear that the district court was merely telling appellant that its conclusory complaint remained inadequate and, while appellant's lack of an opportunity

for full-blown discovery would moderate the court's expectations as to the degree of specificity required, that factor would not totally negate the need for specific factual allegations. When thus interpreted, we find the district court's observation quite correct and proper.

We also note that this comment, if anything, supports our conclusion, *infra,* that the court was not inhospitable to discovery requests *per se,* but rather merely sought to retain control over the discovery process which, in this multipartied antitrust suit, might otherwise become unmanageable. We believe that this comment, in combination with other references in the order to discovery by defendants, demonstrates that the facially limited stay was in fact so intended, and as appellant reasonably should have understood it to be. Since, prior to its Rule 56(f) affidavit, appellant had not sought any significant discovery—pursuant to the Federal Rules or otherwise—we can only judge the court's actual hospitality to discovery by considering the less direct statements it made during the course of the proceedings below. Thus we find, upon reviewing the entire record before us, and as developed *infra,* that the district court neither in fact nor in appearance sought to discourage controlled discovery.

which was simultaneously set for May 18, 1978.[19] In that same order, the court advised "that at the status conference . . . the Court will set forth discovery guidelines [and] procedures for scheduling motions and discovery. . . ." After a postponement, the status conference was held on June 8, 1978.

As later explained by the trial court in its decision on appeal, the stay had been ordered for appellant's benefit:

> In order to protect the plaintiff from a barrage of paper work resulting from the numerous parties who have been named as defendants herein, the Court stayed all discovery proceedings on May 4, 1978 and set a status conference on June 8, 1978.
>
> \*   \*   \*   \*   \*   \*
>
> At the outset of this litigation, the Court stayed discovery so that all parties could answer and file motions without the plaintiff being bombarded with multiple discovery requests.[20]

At the June 8, 1978 status conference, the court issued a pre-trial order which set out comprehensive rules for the conduct of discovery. While the order began with a terse preclusion of general Rule discovery without application to the court—"[a]ll discovery . . . is hereby stayed pending further orders of this Court"—it was followed by an elaborate scheme for controlled discovery. For example, one week per month beginning in November 1978 was set aside for discovery, limits were placed on the number of interrogatories which could be served, duplicate discovery was prohibited, a procedure was created for avoiding disputes over document production and special provision was made for the handling of confidential information. The court emphasized: "No formal discovery allowed by the Federal Rules of Civil Procedure shall be permitted except by leave of Court." The district court also scheduled a second pre-trial conference for October 12, 1978.

As a prelude to this second conference, the court presented in a minute entry the agenda of matters for the parties' consideration. Among the topics which the parties were to be "prepared to discuss" was "whether any discovery will be needed to file evidence in support of or in opposition to the pending motions." Despite the pendency of motions for summary judgment on behalf of the defendants, before and at the conference appellant failed either to raise the issue of or profess any need for discovery.[21]

Subsequently, after new Rule 56(e) motions for summary judgment were filed by

---

19. The stay order came on the heels of one defendant's notice to depose appellant and appellant's counsel, on April 4, 1978. At this time, none of the defendants had answered and only one defendant had moved against the complaint. In its April 12th order, the district court stayed the notice of depositions "until further orders of this Court."

20. The trial court similarly characterized the purpose of that stay during the course of the summary judgment hearing of April 27, 1979, at which appellant's desire for discovery was first brought to the court's attention.

21. In its opinion granting summary judgment, the court observed:

> In anticipation of the October 12, 1978 status conference, the Court, on October 2, 1978, issued an order instructing the parties to be prepared to discuss, among other matters, "whether any discovery will be needed to file evidence in support of or in opposition to the pending motions." The plaintiff failed to notify the Court that he needed any discovery in order to file an opposition to the defendants' pending motions. When the conference was held on October 12, 1978, no formal request for discovery was made by the plaintiff nor was there any request filed by the plaintiff for an extension of time in which to facilitate discovery.
>
> \*   \*   \*   \*   \*   \*
>
> Prior to, and at, the conference, the plaintiff made no mention whatsoever of his need for discovery, nor did the plaintiff request leave of Court to engage in any discovery of any kind.

Appellant argues that it could not be faulted for its failure to raise the issue of discovery at the October 12th conference as defendants' November 30th motions had not yet been made, and hence the district court's order to discuss whether discovery was needed "to file evidence . . . in opposition to the pending motions" was inapplicable. We disagree with appellant's rigid interpretation of the court's directive, particularly in light of other, prior motions to dismiss by defendants which were pending on October 4th and which provided appellant ample notice that its conclusory complaint would be met by further, more elaborate motions for summary judgment.

defendants on November 30, 1978, in response to appellant's second amended complaint, appellant filed a Rule 56(f) affidavit on January 5, 1979 which averred that appellant could not present facts in opposition to defendants' motions because it "has not had the opportunity to discovery . . . [whether defendants] acted contrary to their economic interests." [22] This brief affidavit was not brought to the court's attention for almost four months when, at the April 27, 1978, hearing on defendants' motions, appellant raised the affidavit in defense.[23] In the interim, appellant had not sought any significant discovery.[24]

At and after the April 27th hearing, with the stay on formal discovery absent court order still in effect, the court twice directed appellant to be more specific in its discovery requests, and to explain the purpose of and justification for the delayed requests.[25] After appellant's second attempt to satisfy the court's order for further explanation, the case was taken under advisement. One year later,[26] with the discovery stay still in effect, the court issued its order granting defendant's motions for summary judgment. This order is the subject of the immediate appeal.

## Adequate Opportunity for Discovery?

■■ As we conclude above, but for the question of the adequacy of the discovery opportunities permitted appellant, the dis-

---

As summarized above, see note 18 and accompanying discussion supra, the court's order of September 6, 1978 directed appellant to file a second amended complaint and withheld a decision on defendants' then-pending motions for summary judgment until the filing of this amendment. The court therein set up a timetable for these motions to be renewed, which postdated the October 12th conference, and admonished the defendants to prepare motions which would satisfy the requirements of Fed.R. Civ.P. 56. Although these renewed motions, with their detailed Rule 56(e) affidavits, were not before the court at the time of the October 12th conference, the court's order of September 6th had been issued. Given the pendency of defendants' pre-November motions, and the court's findings of September 6th with regard to both appellant's conclusory complaint and defendants' pending motions, appellant may not be heard to complain that it neither could nor should have known that the discovery discussion invitation applied to its situation as of the October 12th conference.

**22.** Note 6, supra, sets out the affidavit's contents.

**23.** See note 7 supra.

**24.** In its opinion of October 31, 1979, the district court found that appellant "failed to take any affirmative steps to institute discovery or uncover facts which might tend to show the existence of a conspiracy."

The only formal Rule discovery sought by appellant, at any time during the pendency of the litigation, was a "Request for Inspection of the Premises by the Court" filed during this four-month period on January 15, 1979 and denied by the court on the same date. This motion read in its entirety:

NOW INTO COURT, through undersigned counsel, comes plaintiff, Paul Kadair, Inc. d/b/a Paul Kadair's Home and Commercial Audio, and formally requests that, in connection with the pending Motions for Summary Judgment and to Dismiss, the Court make a personal inspection of the premises of Paul Kadair, Inc. d/b/a Paul Kadair's Home and Commercial Audio at 4773 Convention Street, Baton Rouge, Louisiana.

The reason for this request is based on allegations by the defendants, which taken as a whole, indicate that plaintiff's business is not worthy of being dealt with.

Plaintiff feels that its business is impressive, well run and exemplary in every respect and that the Court should acquaint itself with the premises and receive a "tour" thereof prior to ruling on the pending motions.

The only other allegations of discovery attempts appear in appellant's supplemental Rule 56(f) affidavit of May 3, 1979, in explanation of appellant's inability to obtain information from defendants through more informal non-Rule means, i.e., that appellant had been "rebuffed, side-tracked and ignored when attempting to obtain information relative to the refusals [to deal]." See note 9 supra. The district court implicitly discredited or discounted any attempts alleged therein in concluding that appellant failed to initiate any discovery during the pendency of the litigation. In the record before us, appellant specifies none of the claimed frustrated attempts allegedly made. Accordingly, we cannot find that the district court erred in finding that appellant had not sought any significant discovery.

**25.** See notes 9–12 and the accompanying discussion supra.

**26.** See note 13 supra.

trict court's grant of summary judgment clearly was proper.[27] Although summary judgment procedures "should be used sparingly in complex antitrust litigation where motive and intent play leading roles," *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), summary judgment may be granted where a plaintiff can aver no significant probative facts in support of its conclusory allegations of conspiracy against defendants' specific averments to the contrary. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Parsons v. Ford Motor Co.*, 669 F.2d 308 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186 (5th Cir.1978); *Solomon v. Houston Corrugated Box Co.*, 526 F.2d 389 (5th Cir. 1976); Fed.R.Civ.P. 56(e), (f) and Adv. Comm. Notes. *Accord, Lamb's Patio Theatre, Inc. v. Universal Film Exchanges, Inc.*, 582 F.2d 1068 (7th Cir.1978); *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620 (9th Cir.1977). In the immediate case, absent consideration of the discovery issue, appellant's complaint, which remained conclusory despite two amendments, was properly subject to summary judgment inasmuch as appellant failed to offer any significant probative evidence tending to refute appellees' specific Rule 56(e) averments substantiating the lack of a conspiratorial group boycott.[28]

**27.** As correctly found by the district court, a company, acting unilaterally, has the right to select its customers and to refuse to sell its goods to anyone for reasons sufficient to itself. *See, e.g., Aviation Specialties, Inc. v. United Technologies Corp.*, 568 F.2d 1186 (5th Cir. 1978) (citing *Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245, 1248 (5th Cir.1975) and *United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919)). Proof of parallel behavior alone does not establish a *prima facie* case of a violation of the Sherman Act. *See Aviation Specialties, Inc. v. United Technologies Corp., supra,* 568 F.2d at 1192. In order to avoid a motion for summary judgment, a claimant must come forward with significant probative evidence supporting its theory of conscious parallelism with, as it has often been stated, some "plus" factor which tends to indicate that the asserted unilateral behavior was not such in fact, *e.g.,* that the decisions not to deal were contrary to defendants' economic self-interest so as to raise an issue of good faith business judgment. *See Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273 (1954). In the immediate case the district court properly concluded that, in light of appellees' uncontroverted averments of economically sound business reasons for their individual decisions not to deal with appellant and appellant's inability to set forth any significant probative evidence which might suggest the contrary, appellant's allegation of parallel behavior alone did not establish a *prima facie* case. *Cf. First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) (the nature of the business relationship between plaintiff and defendants—whether competitors or not—may be considered in determining whether it is more plausible to conclude either unilateral or collusive behavior; in the immediate case, while appellant's complaint swept all types of concerns within its allegations, its focus in the proceedings below was upon the noncompeting defendant manufacturers and manufacturers' representatives/distributors. *See* note 34 and the accompanying discussion *infra*).

**28.** *See* note 27 *supra.* Paul Kadair averred that one manufacturers' representative, L.J. Paul & Associates, Inc., informed Kadair "that the competition would become 'angry' if Kadair were sold Pioneer equipment." L.J. Paul & Associates presented affidavits which denied this averment and explained that: (1) as representative it merely took orders within its territory for the various, competing manufacturers it represented, trained retailers' new salesmen, and performed other informational services; (2) it did not act as a distributor or wholesaler, and accordingly did not inventory stereo equipment; (3) it did not function to approve or disapprove a request by a retailer to be franchised for a given product, a function which was performed exclusively by each manufacturing company; (4) it informed Kadair, who was already franchised to sell other brands L.J. Paul represented, how and where to apply for a U.S. Pioneer franchise; and (5) it was never called upon by U.S. Pioneer to express any opinion as to Kadair's credit-worthiness, as was the occasional practice of the manufacturers, although if called upon it saw "no reason" not to recommend Kadair for franchise approval. Affidavits presented on behalf of U.S. Pioneer confirm L.J. Paul's characterization of the manufacturer-representative relationship and the fact that U.S. Pioneer alone controlled the franchise-approval process. Further, U.S. Pioneer's affidavits aver that Kadair never completed his credit application, and hence no action was taken on Kadair's franchise request in accordance with standard practice.

In light of L.J. Paul and U.S. Pioneer's affidavits, viewed together with the record before us,

As to the sufficiency of discovery opportunities, the district court held in denying appellant discovery pursuant to the latter's Rule 56(f) request:

> This Court has serious doubts that the plaintiff has met the formal requirements of Rule 56(f) which requires that the plaintiff's affidavit set forth with sufficient particularity the controverting facts that he expected to educe from the discovery which he sought and that those controverting facts would have created a genuine issue of fact sufficient to forestall the summary judgments which have been filed by the defendants. However, assuming arguendo that plaintiff's motion did meet the formal requirements of Rule 56(f) and that his 56(f) affidavits alleged with sufficient particularity the controverting facts that he expected to obtain from the discovery which he sought and that those controverting facts would have created a genuine issue of fact sufficient to forestall the summary judgment, the Court must determine whether or not in the exercise of discretion afforded to it plaintiff should be granted a continuance to obtain additional discovery in this case.

It is clear that plaintiff has failed to diligently and timely engage in discovery to obtain the necessary information to oppose defendants' motions. A lack of diligence in obtaining the needed information to oppose a motion for summary judgment should not supply the basis for delay simply by relying on Rule 56(f) of the Federal Rules of Civil Procedure.[29]

After reviewing this Circuit's precedent on dilatory Rule 56(f) discovery requests, the district court further observed:

> Plaintiff's chief concern is that he has not instituted any discovery whatsoever and that he is entitled to prove the motives and intent of the alleged conspirators as provided for in *Poller v. Columbia Broadcasting Systems, Inc.,* supra. This argument cannot prevail in light of the Court's earlier recitation as to the plaintiff's nonchalance in seeking discovery and his failure to assert specific facts to support his request for discovery. [citation and quotation omitted]. In the present case, the plaintiff's original complaint was less than well drafted. In fact, the Court, on two occasions, had to order the complaint to be amended. The Court was also required to order the plaintiff to clarify his discovery request.

we do not find that Kadair's averment, that L.J. Paul refused to deal with it as the competition would become "angry," represents any specific, significant probative evidence of conspiracy. This is the sole specific averment by appellant in the record although specific evidence was requested over and over by the court. It is an ambiguous statement, attributed to one of over forty-named defendants. It does not ring true given L.J. Paul's peculiar and limited role in the distribution scheme. It was so *de minimis* as to be properly discounted by the court below in reaching its conlusion that Kadair failed to present any specific facts tending to show the existence of the alleged conspiracy.

29. The court set out the comments of experts in federal procedure in further support of this proposition:

> The most common situation in which the rule will not be applied to aid a nondiligent party arises when the nonmovant has complied with Rule 56(f) but has failed to make use of the various discovery mechanisms that are at his disposal or seeks a continuance of the

motion for that purpose. The courts will not delay a case to allow discovery instituted earlier, especially when there is no reason to believe that it will lead to the denial of the motion. [10 C. Wright and A. Miller, Federal Practice and Procedure § 2740 at p. 726 (1973) (footnote omitted)].

> \*    \*    \*    \*    \*    \*

> [T]he opposing party should present his affidavit showing that the knowledge or control of the facts is exclusively or largely with the moving party and describe his attempts to obtain those facts. The mere averment of exclusive knowledge or control of the facts by the moving party is not adequate; the opposing party must show to the best of his ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that he is desirous of taking advantage of these discovery procedures. [6 J. Moore, Federal Practice § 56.24 at 2876 (2d ed. 1974) (footnote omitted)].

The latter order was issued after lengthy oral argument on the pending motions.[30]

\* \* \* \* \* \*

The intent of Rule 56(f) of the Federal Rules of Civil Procedure is not to open the discovery net to allow a fishing expedition. Instead, the rule is designed to enable a party to seek particular facts relevant to an already-established factual pattern of alleged antitrust activity. It is apparent, by the plaintiff's own admission, that the purpose of discovery in the present case would be to ascertain whatever information possible in order to set forth specific violations of the Act. However, plaintiff cannot state that he could obtain significant probative evidence during the discovery process which would be sufficient to oppose defendants' motions. It is clear that plaintiff has failed to set forth a factual predicate to justify Rule 56(f) discovery.

In light of the above considerations, the district court denied appellant's Rule 56(f) request for a continuance in order to proceed with discovery.[31]

■ We begin our examination of the district court's ruling by noting that the grant or denial of a continuance pursuant to Rule 56(f) in order to proceed with discovery rests within the discretion of the district court, to be disturbed on appeal only if its decision reflects an abuse of that discretion. *See Pan-Islamic Trade Corp. v. Exxon Corp.,* 632 F.2d 539, 550 (5th Cir. 1980), *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981) (and the cases cited therein); *Walters v. City of Ocean Springs,* 626 F.2d 1317, 1321 (5th Cir.1980); *Aviation Specialties, Inc. v. United Technol-*

*ogies Corp., supra,* 568 F.2d at 1189; *United States v. 110 Bars of Silver,* 508 F.2d 799, 801 (5th Cir.), *cert. denied sub nom. Resnick v. United States,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975). *But cf. Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976) ("dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly" in antitrust cases); *Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1146 (5th Cir.) (en banc), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973) (denial of 56(f) continuance was an abuse of discretion where case complications, in particular the parties' relative access to the information sought, led to Circuit Court's determination out of "an abundance of caution and to prevent a possible injustice"). After careful consideration of the record below, we find that while there may be some room for disagreement with the district court's determination, we cannot conclude that its decision reflected an abuse of discretion.

Rule 56(f)[32] provides that a continuance or other order with regard to discovery shall be granted as is "just." No other, more specific guidance appears therein to limit the court's exercise of its discretion. Few rules exist as to when a Rule 56(f) request should be either granted or denied, as that question is necessarily a fact-bound one with endless possible permutations. However, certain general propositions and factors relevant to our determination are revealed in the existing case law.

■ As correctly noted by the district court, a plaintiff's entitlement to discovery prior to a ruling on a motion for summary

---

**30.** The court distinguished as irrelevant to the facts at hand the Supreme Court's decision in *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), relied heavily upon by appellant both in the court below and on appeal:

The crucial distinction between *Klor's* and the present case is that the defendants in *Klor's* did not deny the plaintiff's allegations. The defendants in *Klor's* merely submitted affidavits showing that there were "hundreds" of other competitors in the area. In the instant case, the defendants have denied,

with substantiating reasons, the plaintiff's conspiracy contentions. The plaintiff has filed absolutely no evidence to rebut defendants' sworn allegations.

We agree with the district court that the Supreme Court's decision in *Klor's* does not bear upon the issue at hand.

**31.** The court's summary of its findings is quoted, *supra,* in the text preceding note 17.

**32.** *See* note 6 *supra.*

judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by plaintiff to withstand a Rule 56(e) motion for summary judgment. *See, e.g., Walters v. City of Ocean Springs, supra. Accord, Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97 (2d Cir.1981). *Cf. First National Bank of Arizona v. Cities Service Co., supra* (limitations on general pre-trial discovery and denial of further Rule 56(f) discovery not improper as additional discovery would merely amount to a fishing expedition and would unduly harass defendant); *Aviation Specialties, Inc. v. United Technologies Corp., supra* (curtailment of discovery was not an abuse of discretion where plaintiff was dilatory, the substance of the disallowed requests indicated that the requested discovery would not be helpful, and a significant amount of discovery had already taken place).

■ Indeed a district judge may exercise his discretion to prevent "the plaintiff from burdening the defendants with a needless round of discovery in [a] frivolous lawsuit":

> [I]t is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover.

\* \* \* \* \* \*

Where a plaintiff fails to produce any specific facts whatsoever to support a conspiracy allegation, a district court may, in its discretion, refuse to permit discovery and grant summary judgment. Something more than a fanciful allega-

tion is required to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine issue of material fact. A "bare assertion" that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f).... Rule 56(f) cannot be relied upon to defeat a summary judgment motion "where the result of a continuance to obtain further information would be wholly speculative."

*Contemporary Mission, Inc. v. United States Postal Service, supra,* 648 F.2d at 107.

In *First National Bank of Arizona v. Cities Service Co., supra,* the Supreme Court upheld the lower court's grant of a summary judgment, despite the existence of a prohibition against general discovery throughout the pendency of the antitrust suit, finding persuasive the district court's conclusion that the requested discovery would merely be a "fishing expedition" and would unduly harass the defendant. In determining whether an unjustified fishing expedition was shown, the Supreme Court deemed relevant the degree of specificity already offered by the charging party that a conspiracy existed [33] and the peripheral or focused nature of the particular discovery requests made.[34] *See also In Re Municipal Bond Reporting Antitrust Litigation,* 672 F.2d 436, 440 & n. 7 (5th Cir.1982), citing *Solomon v. Houston Corrugated Box Co., supra,* and *Lupia v. Stella D'Oro Biscuit Co.,* 586 F.2d 1163, 1167 (7th Cir.1978), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1791, 60 L.Ed.2d

---

**33.** As in the immediate case, a conspiracy to boycott had been alleged in *First National Bank of Arizona* in conclusory terms and based upon a theory of conscious parallelism.

**34.** As in this case, the Supreme Court also was faced with peripheral, indirect requests for discovery. We find, after examining the discovery requests made before the court below, *see* discussion *supra,* that appellant's requests were somewhat peripheral to the conspiracy issue. Although, with varying degrees of relevancy, these requests for general information

concerning the defendant manufacturers and distributors may conceivably have elicited some useful information, they were far from the most direct, unanswered and logical inquiries which could have been made to elicit specific evidence of a conspiracy. Further, as admitted by appellant at the April 27, 1978, hearing held by the court below, appellant never sought to elicit discovery from one of the important potential sources of conspiratorial evidence, the defendant retailers who, alone among the defendants, were in competition with appellant.

242 (1979), to the effect that the expensive and time consuming nature of antitrust litigation along with the statutory treble damage remedy, may particularly inspire vexacious litigation, an evil which summary judgment may guard against. *Accord, Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc.,* 637 F.2d 1376, 1381 (9th Cir.) *cert. denied,* 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981); *Lupia v. Stella D'Oro Biscuit Co., supra,* 586 F.2d at 1167.

■ Similarly, discovery may be limited if dilatorily sought. *See First National Bank of Arizona v. Cities Service Co., supra; Pan-Islamic Trade Corp. v. Exxon Corp., supra; Walters v. City of Ocean Springs, supra; Aviation Specialties, Inc. v. United Technologies Corp., supra.* What is "dilatory" depends upon the particular posture of the case presented. The factors deemed relevant in the cases, discussed in those cited above, are: 1) the length of the pendency of the case prior to the Rule 56(f) request; 2) whether and when plaintiff could have anticipated its need for the requested discovery; 3) the previous efforts, if any, made by plaintiff to obtain the needed information either through Rule discovery or otherwise; 4) the degree and nature of discovery already undertaken; 5) any limitations placed upon discovery previously by the trial court; 6) any prior solicitations of or provisions for discovery by the trial court; 7) any warning which plaintiff might have had that, absent a speedier request, discovery might be denied and his claim be dismissed; and 8) whether the requested information was inaccessible to plaintiff, *e.g.* as when within defendant's exclusive control, or whether alternative, accessible sources existed but were foregone.

■ In applying the above principles to the case before us, we find that the district court's denial of appellant's discovery request was not an abuse of discretion. While we recognize that some significant factors point against this conclusion, we are satisfied that those which support the trial court's determination are of sufficient strength we cannot say that the court's decision was unjust under Fed.R.Civ.P. 56(f).

Weighing most heavily against the sagacity of the district court's determination are two interrelated factors: 1) the relatively short period of delay, in comparison with those lengthier delays appearing in some of the cases, cited *supra,* which found dilatoriness; and 2) the trial court's stay of general discovery throughout the proceedings, absent court permission, save for the first month following appellant's filing of its original complaint. In contrast to the many years' delay in such cases as *First National Bank of Arizona v. Cities Service Co., supra* (five and one-half years) and *Pan-Islamic Trade Corp. v. Exxon Corp., supra* (over two years), which relied upon plaintiff's dilatoriness as a ground for discovery denial, delay by appellant in pursuing discovery was much shorter. The complaint was filed in March 1978, and the unnoticed Rule 56(f) affidavit was filed in January 1979, and brought to the court's attention in April 1979. Thus, the relevant benchmark of delay would be, at most, a little over one year. In order to assess whether this period of delay reflected dilatoriness on appellant's behalf we must examine the nature of the district court's stay of discovery.

As discussed above,[35] the district court made it clear to the parties that the stay was limited in effect, and solely for the purpose of guaranteeing the sort of controlled discovery necessary to prevent both duplicative and vexacious requests which would otherwise ensue in the multi-partied discovery process.[36] The presence of the stay, therefore, while potentially moderating the degree of appellant's dilatoriness does not excuse appellant's total lack of discovery attempts during the relevant one-year period. *Cf. First National Bank of*

---

**35.** *See* notes 18–21 and the accompanying discussion *supra.*

**36.** This procedure is in accordance with that frequently adopted in complex litigations. *See generally Manual for Complex Litigation* (CCH 1978).

*Arizona v. Cities Service Co., supra* (with a similar stay in effect, plaintiff had sought some discovery; the Court did not find plaintiff's delay to be excused by the partial stay in effect throughout the litigation therein).

When the remaining factors are considered and applied to the immediate case, we find that the period of delay, when considered in light of the limited stay, does not persuade us that the district court improperly curtailed discovery. Appellant's complaint, despite two amendments, remained wholly conclusory. Appellant was unable to offer any specific allegations of fact tending to prove its theory of a group boycott other than its allegations of defendants' refusals to deal. Once defendants specifically denied these allegations with Rule 56(e) affidavits averring to independent, legitimate business reasons explaining any alleged refusals, appellant was unable to controvert these with substantial probative evidence to the contrary.

While much of that evidence, if in existence at all, lay within defendants' control, some evidence in refutation of defendants' averments and in support of appellant's conspiracy claim was available to appellant if its allegations of conspiracy were true. For example, appellant could have offered proof of its credit-worthiness from its principal-owner or its own banker in refutation of defendants' averments to the contrary. But it failed to do so.[37] Further, even after appellant twice refined its Rule 56(f) discovery request at the court's direction, appellant's discovery request remained vague and peripheral to the key issue of conspiracy. Even then, the discovery request omitted any desire to pursue evidence from the most-likely conspiratorial defendants, the retailers in competition with appellant. Similarly, appellant did not seek to question those persons who had made affidavits on behalf of defendants in order to controvert those affidavits. Finally, it can be fairly said, that the "discovery requests disallowed by the district court show no relevant request of consequence for which [appellant] could not have anticipated its need at the time it filed its complaint." *Aviation Specialties, Inc. v. United Technologies Corp., supra,* 568 F.2d at 1189–90.

The above considerations support the district court's characterization of appellant's request for discovery as an impermissible fishing expedition. The district court properly concluded that it would be highly unlikely that appellant's discovery requests, if granted, would produce any significant probative evidence of conspiracy in refutation of defendants' Rule 56(e) affidavits. Given appellant's repeated inability to provide *any* facts in support of its conspiracy theory, the court correctly observed that appellant would not be permitted to go fishing with the hope of fortuitously discovering some unknown and unsuspected evidence of a conspiracy.

We find untenable appellant's implication that the trial judge should have done more than he did to solicit discovery and to warn of possible consequences should discovery not be promptly initiated. The court below performed its role as the moderator of the dispute, most specifically by its first pre-trial order of June 6, 1978, which elaborately addressed discovery procedures, by its minute entry which requested the parties to be prepared to discuss at the October 12, 1978, status conference "whether any discovery will be needed to file evidence in support of or in opposition to to the pending motions," and by its other orders making reference to discovery.[38] Yet despite these directions and admonitions, appellant remained silent. The district court, as moderator, cannot be required to take a party by the hand and lead it through all the steps of

**37.** *See Walters v. City of Ocean Springs, supra,* 626 F.2d at 1321–22 ("The parties' comparative access to the witnesses or material relevant to the disposition of the rule 56(f) motion is a particularly salient factor for the trial court to consider in exercising its discretion"); 10 C. Wright & A. Miller, Federal Practice and Proce-dure § 2728, at 557, and § 2741, at 731–40 (1973).

**38.** With regard to discovery, the district judge at the April 27, 1978 hearing remarked: "What more can I do as a judge?"

the preparation of a case for trial. This district court urged appellant over and over again to develop specific allegations and to obtain specific information to flesh out its bare and speculative complaint. Appellant's responses were inadequate throughout.

### Conclusion

In summary, the district court found the final discovery request of August 1979, was vague and ineffective, as all others had been. The entire record reveals that Judge Polozola after this request felt that appellant had been given its last chance to justify discovery and had failed. Hence it was not necessary to rule on the discovery motion before granting the summary judgment motion. Appellant had been given more than adequate overall opportunity to establish a case adequate to block summary judgment and had finally come up with only a fishing expedition. Our consideration of the entire record leads us to conclude that his decision was not an abuse of discretion.

Accordingly, we AFFIRM.