### AVIATION SPECIALTIES, INC.,
Plaintiff-Appellant,

v.

### UNITED TECHNOLOGIES CORPORATION,
Defendant,

**Pratt-Whitney Aircraft of Canada, Ltd., and Airwork Division of Pacific Airmotive, Inc., Defendants-Appellees.**

No. 76–2666.

United States Court of Appeals, Fifth Circuit.

March 6, 1978.

Rehearing and Rehearing En Banc Denied March 31, 1978.

Douglas R. Padgett, Atlanta, Ga., for plaintiff-appellant.

R. L. Edwards, Charles A. Kimbrell, Richard Alan Arnold, Miami, Fla., for Pratt-Whitney.

Harry Kemker, Michael Addison, Tampa, Fla., for Airwork Div., Etc.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Plaintiff, Aviation Specialties, Inc. [ASI], appeals the district court's grant of summary judgment on its multiple antitrust claims against the defendants, Pratt-Whitney Aircraft of Canada, Ltd. [Pratt-Whitney][1] and Airwork Division of Pacific Airmotive, Inc. [Airwork]. ASI asserts that the district judge abused his discretion by curtailing discovery, that genuine issues of material fact remained requiring resolution at trial, and, therefore, that summary judgment was improper. Finding no merit in these claims, we affirm.

Only Pratt-Whitney manufactures the popular PT–6 jet turbine engine, which it introduced in 1964. Within a year, Pratt-Whitney set up a distributorship system in the United States for sale of repair parts which designated three distributors: Pacific Airmotive, Inc., Dallas Airmotive (subsequently acquired by Cooper Industries, Inc.), and Pratt-Whitney's co-defendant, Airwork.[2] Under the distributorship plan, Pratt-Whitney sold parts only through the distributors or original equipment manufacturers [OEMs]. Distributors and OEMs could obtain parts at list minus 40%, except that OEMs with an international distribution network could receive a 55% discount.[3] Terms of the distribution agreement did not bind Pratt-Whitney not to add other distributors. While Pratt-Whitney sold no unembodied spare parts except through its distributors, it maintained a shop where it performed work on PT–6 parts or engines sent to it under repair contracts. On this work Pratt-Whitney offered ASI the same terms it offered to its distributors: a 25% discount on embodied parts, plus a labor charge.

ASI began operations in 1965, but the Federal Aviation Administration [FAA] did not certify it to overhaul PT–6 engines until May 1972. While many shops perform major and minor repairs on the PT–6, only three shops other than ASI are certified by FAA to perform overhauls: Pacific Airmotive, Cooper Industries, and the defendant Airwork. Because Pratt-Whitney designated these latter three shops as distributors for PT–6 parts, parts were sold directly to

---

1. Formerly known as United Aircraft of Canada, Ltd.

2. The original complaint also named as a defendant United Technologies Corporation, which owns 97% of Pratt-Whitney's stock.

The parties stipulated to a dismissal of the action against United Technologies, with prejudice.

3. Only Beechcraft Aircraft qualified for a distributorship of this class.

them at a 40% discount. ASI could buy unembodied Pratt-Whitney PT–6 parts only from one of Pratt-Whitney's designated distributors at a lesser discount of 20% from the list price.

ASI demanded that Pratt-Whitney either sell its parts directly at a 40% discount or include it as a distributor. Pratt-Whitney refused and ASI initiated this action asserting five legal theories against its competitor Airwork and against Pratt-Whitney: (1) an alleged conspiracy to monopolize by Airwork and Pratt-Whitney which ASI contends was designed to obtain a monopoly for Airwork over PT–6 engine repair in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1; (2) an alleged attempt to monopolize the repair of PT–6 engines by Airwork in violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2; (3) an alleged conspiracy between Pratt-Whitney and Airwork unreasonably to restrain trade in the repair of PT–6 engines in violation of Section 1 of the Sherman Act, 15 U.S.C.A. § 1; (4) alleged price discrimination by Pratt-Whitney between the sale of embodied parts to ASI and replacement spare parts to Airwork in violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(a); and (5) alleged inducement of this price discrimination by Airwork in violation of Section 2(f) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(f). The district court held that ASI had not shown a genuine issue of material fact to withstand summary judgment on any of these theories.

█ ASI first challenges summary judgment in favor of the defendants because the district judge, in refusing ASI's request for a continuance, curtailed discovery too soon for full development of the factual issues in the case. The grant or denial of a continuance rests with the discretion of the district court, and appellate review aims only at determining whether the district judge abused that discretion. *United States v. 110 Bars of Silver,* 508 F.2d 799, 801 (5th Cir. 1975), *cert. denied, sub nom. Resnick v.*

*United States,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975). We find no abuse of discretion in the case at bar because plaintiff failed to proceed promptly with the discovery he sought, a significant amount of discovery took place notwithstanding plaintiff's lack of diligence, and the substance of plaintiff's disallowed discovery requests, under the circumstances, indicated that the further discovery sought would not be helpful.

ASI filed this action on May 8, 1975. On November 13, 1975, when the district judge set the date of the pre-trial conference, plaintiff had not initiated any discovery, even though its action then had been on file for six months. When the district court ordered the parties to complete discovery by January 23, 1976, counsel for ASI alleged surprise at the setting of such an "early" date. Despite the shock, ASI took no immediate steps to secure information from the defendants. Rather, it was not until December 1, 1975, that ASI filed notice to depose Pratt-Whitney officials, and it was December 8, 1975, before ASI submitted its first proper set of interrogatories [4] and first request for the production of documents. Subsequently, ASI directed untimely interrogatories, which the district court disallowed, to both defendants on December 30, 1975; to Pratt-Whitney alone, also on December 30, 1975; and to Airwork alone on January 15, 1976, coupled with a request for the production of documents. Although the requests were submitted prior to the deadline for termination of discovery, the reply dates would have fallen beyond the date for termination of discovery.

█ ASI obtained a large quantity of information from its timely requests and from its deposition of defendants' officers. ASI argues that a number of pre-trial motions occupied counsel's time and that the parties did not truly join issue in the case until after the November 13, 1975, order setting the date for the pre-trial conference. The discovery requests disallowed by the district court show no relevant request

4. ASI withdrew its first interrogatories to clarify them.

of consequence for which ASI could not have anticipated its need at the time it filed its complaint. Plaintiff must bear the consequences of its decision to proceed with discovery piecemeal.

■ A plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited. When the record becomes clear enough to disclose that further discovery is not needed to develop significant aspects of the case and that such discovery is not likely to produce a genuine issue of material fact, discovery should be ended. *Universal Brands, Inc. v. Philip Morris, Inc.,* 546 F.2d 30, 36 (5th Cir. 1977); *Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1145 (5th Cir. 1973), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973). To excuse the failure to submit discovery requests promptly, counsel for ASI advances the mistaken belief that discovery in an antitrust case must invariably continue in successive waves over many years. Any complex litigation may produce a need for lengthy or successive discovery

procedures, but the case at bar does not lie in that category. The parties agreed on the basic facts surrounding the operation of the Pratt-Whitney distribution system and differed only about the inferences which could be drawn from those facts. Neither ASI's disallowed requests for discovery nor its motion to continue the pre-trial conference suggest any potential factual issue in the suit which further discovery would have illuminated so as to preclude summary judgment. Additionally, ASI's December 30, 1975, interrogatories to Pratt-Whitney appear to be nothing more than a thinly veiled attempt to enhance the strike capability of its suit.[5] Yet, while seeking additional discovery of dubious relevance from the defendants,[6] ASI sought to evade the defendants' requests for disclosure of its acknowledged alternative supplier of discount parts—information key to a possible defense to attempted monopolization.[7] Under these circumstances, we hold that the district judge did not abuse his discretion in declining to lengthen the time allotted for discovery.[8]

**5.** This set of interrogatories included the following questions:

Would you sell PT-6 jet turbine parts direct to Plaintiff at the same prices you charge your U. S. buyers if Plaintiff agreed to maintain his PT-6 facilities on the island of Bimini, which is part of the Republic of the Bahamas, and not reship these parts into the U. S.?

. . . . .

(b) Specify your requirements for shipping to Plaintiff under the above conditions to Bimini

. . . . .

(c) Would you allow Plaintiff to be your Carribean distributor for PT-6 parts?

. . . . .

(d) Would you allow Plaintiff to be your Latin American distributor for PT-6 engine parts?
(1) If not, specify each reason, economic or otherwise, why not.
(2) Identify each person in this decision process and specify his part in the decision.
(3) Specify each & every reason for each & every requirement listed.
(4) Identify each document used to support this answer and name of person who has custody of it.

**6.** Other questions asked Pratt-Whitney to identify repair invoices and state prices of parts sold to distributors before and after the invoice

dates. This data would have been relevant only if the repair invoices had represented sales of commodities under Section 2(a) of the Clayton Act, 15 U.S.C.A. § 13(a). *See infra.*

**7.** ASI also resisted defendants' requests for financial records on the operation of its PT-6 overhaul business, background information on ASI's FAA certification, and the basis of ASI's claim for damages. Pratt-Whitney and United Technologies (eventually dismissed from the case by stipulation) filed a motion to compel, which the district court did not rule on because of the intervening grant of summary judgment for defendants.

**8.** After the district court declined to extend the date for termination of discovery or to continue the pre-trial conference, ASI sought leave to amend its complaint to add as defendants Cooper Industries and Pacific Airmotive, the two Pratt-Whitney distributors other than Airwork which also have FAA certification to perform overhauls. The district court denied the motion, among other reasons, because of ASI's prior knowledge that Cooper and Pacific were distributor-overhaulers, which gave the motion a transparent dilatory purpose. A grant of the motion would almost certainly have required a continuance of the case, on the heels of the denial of ASI's motion seeking additional time for discovery.

ASI's claim that Airwork induced unlawful price discrimination under Section 2(f) of the Clayton Act, as amended by the Robinson-Patman Act, depends upon a showing that Pratt-Whitney engaged in unlawful price discrimination under Section 2(a). ASI asserts these claims in the alternative to its Sherman Act claims. ASI's Sherman Act claims rest on Pratt-Whitney's refusal to sell ASI any PT–6 parts. The unlawful price discrimination claims assume that when Pratt-Whitney agreed to do repair work for ASI on PT–6 engines and to charge the cost of its labor plus embodied parts at list minus 25%, it sold commodities. It is then postulated that these parts sales discriminated against ASI relative to Pratt-Whitney distributors who could buy unembodied parts at list less 40%. The parties agree that Pratt-Whitney charged all overhaul shops on the same basis: the cost of labor plus parts used at list less a 25% discount.[9]

■ The district court correctly applied the "dominant nature of the transaction" test from *Tri-State Broadcasting Co. v. United Press Int'l, Inc.,* 369 F.2d 268 (5th Cir. 1966), to determine that the sale of embodied parts did not constitute the sale of a commodity within the meaning of Section 2(a). *Tri-State* held that the sale of the UPI news service was not the sale of a commodity. We observed:

> Virtually no transfer of an intangible in the nature of a service, right, or privilege can be accomplished without the incidental involvement of tangibles, and we conclude that in such circumstances the dominant nature of the transaction must control in determining whether it falls within the provisions of the [Robinson-Patman] Act.

369 F.2d at 270 (footnote omitted). The Sixth Circuit previously used the dominant nature of the transaction test in *General Shale Products Corp. v. Struck Construction Corp.,* 132 F.2d 425 (6th Cir. 1942), *cert. denied,* 318 U.S. 780, 63 S.Ct. 857, 87 L.Ed.

1148 (1943), a case cited approvingly in *Tri-State, supra,* 369 F.2d at 270. *General Shale* found no sale of a commodity in a construction contract, even though the contract separately stated the price at which contractor would furnish brick, because the sale price of the brick was part of the overall contract.

■ The district court properly granted summary judgment on ASI's claims of unlawful price discrimination. Pratt-Whitney sold no parts directly to ASI and it offered equal terms on embodied parts to all overhaul shops. The repair invoices submitted by ASI show that although parts costs generally exceeded labor costs on repair contracts, labor costs were a significant portion of the contracts. However, the dominant nature of the transaction test is not met merely by comparing the dollar totals of items in the cost breakdown. In the case at bar, the discount sale of embodied parts is woven into a general repair agreement under which Pratt-Whitney is entitled to charge for its labor. Pratt-Whitney does not perform, or offer to perform repair work for any firm and still grant a lower parts price than list less a 25% discount. Nothing suggests that ASI's repair contracts with Pratt-Whitney were disguised sales of a commodity rather than what they clearly appear to be on their face: contracts for a service, not covered by Section 2(a). Because summary judgment was proper as to the illegal price discrimination claim, the district court properly granted summary judgment upon the dependent Section 2(f) claim of inducement.

■ ASI contends that Pratt-Whitney and Airwork conspired to monopolize and unreasonably to restrain trade in the repair of PT–6 engines and the sale of PT–6 parts in violation of Section 1 of the Sherman Act. A Section 1 claim must be predicated on a showing first that a conspiracy existed and second that the conspiracy unreasonably restrained trade. *Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55

---

9. Airwork's plant manager did acknowledge by affidavit that Airwork has not used the Pratt-Whitney repair service for PT–6 engines except where parts or engines have been sent to Pratt-Whitney for warranty investigations, service evaluation, or experimental work.

L.Ed.2d 619 (1911). The officers of Pratt-Whitney and Airwork denied that any conspiracy existed, thus shifting the burden to ASI to produce significant probative evidence at least of the existence of the conspiracy. *First National Bank v. Cities Service Co.,* 391 U.S. 253, 291, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, 593 (1968); *Solomon v. Houston Corrugated Box Co.,* 526 F.2d 389, 396 (5th Cir. 1976). ASI stipulated that it had no direct evidence to show that the designation of three firms as Pratt-Whitney distributors was anything more than Pratt-Whitney's unilateral business decision or to show any agreement between the defendants beyond the distributorship agreement, which did not bind Pratt-Whitney in choosing additional distributors. ASI rests solely upon circumstantial evidence. Proof of parallel business behavior does not establish a violation of the Sherman Act; therefore, to avoid summary judgment ASI had to come forward with significant probative evidence supporting its theory that the defendants engaged in (1) consciously parallel action, (2) which was contrary to their economic self-interest so as not to amount to a good faith business judgment. *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.,* 346 U.S. 537, 74 S.Ct. 257, 98 L.Ed. 273 (1954). ASI bears a particularly heavy burden because Pratt-Whitney set up its distribution system in 1964, long before ASI began operations, and the structure of the system has not changed perceptibly since its inception.

 Standing alone, Pratt-Whitney's refusal to alter its long-established system to confer the advantages of distributorship upon ASI suggests nothing illegal whatsoever. As a manufacturer, Pratt-Whitney has the right to select its customers and to refuse to sell its goods to anyone for reasons sufficient to itself. *Burdett Sound, Inc. v. Altec Corp.,* 515 F.2d 1245, 1248 (5th Cir. 1975), *citing United States v. Colgate &*

*Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). A refusal to deal becomes unlawful only when it produces an unreasonable restraint of trade, such as price-fixing, elimination of competition, or creation of monopoly. 515 F.2d at 1248, *citing United States v. Parke, Davis & Co.,* 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.,* 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951).

 ASI has brought forth no evidence of parallel behavior suggesting an unlawful agreement. Pratt-Whitney's unilateral refusal to deal cannot support allegations that the defendants violated the Sherman Act. Neither the evidence produced by ASI nor any aspect of Pratt-Whitney's distribution agreement suggests that Pratt-Whitney's distribution system is contrary to its own economic interests. This assertion rests solely upon ASI's own unsupported assessment of the situation, which is insufficient to raise a genuine issue of material fact concerning whether the refusal was premised upon a good faith business judgment. *Solomon v. Houston Corrugated Box Co.,* 526 F.2d 389 (5th Cir. 1976).[10] Therefore, the district court properly disposed of ASI's Section 1 claims on motion for summary judgment.

 The district court also properly granted summary judgment on ASI's claim of attempt to monopolize in violation of Section 2 of the Sherman Act. Establishing a violation of Section 2 requires showing an intent on the defendants' part to bring about a monopoly and a dangerous probability of success. *Yoder Bros., Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347, 1368 (5th Cir. 1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977), *citing Swift & Co. v. United States,* 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518 (1905). The attempt must occur within a defined relevant market. *Sulmeyer v. Coca-Cola*

10. ASI contends that because more distributors would sell more parts for the benefit of Pratt-Whitney, its refusal to add ASI as a distributor must run contrary to Pratt-Whitney's best interest. This argument proves too much. If failure to expand a distribution network com-

posed of a fixed number of primary distributors amounts to action against economic self-interest, every limited distributorship organization would be of dubious legality. *Burdett Sound* holds to the contrary.

*Co.,* 515 F.2d 835, 850 (5th Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976). No evidence produced by ASI, either direct or circumstantial, has raised a genuine issue of material fact as to the defendants' alleged unlawful intent in maintaining the existing distribution system for PT–6 parts. The deposition of Eric Pearson, an ASI officer, acknowledged testimony by Pratt-Whitney's officers that a large number of shops other than FAA-certified overhaul shops perform both major and minor repairs on the PT–6 engine. ASI has not come forward with basic facts about its PT–6 overhaul business that would allow the court to determine whether the overhaul business may constitute a separate relevant market for antitrust analysis apart from the general PT–6 repair business. Pearson's deposition acknowledged that unnamed sources outside the Pratt-Whitney distribution system also supply the market for discount PT–6 parts. Pearson testified that ASI had purchased spare PT–6 parts at a discount through "legitimate" sources other than the distribution system. ASI has steadfastly refused to disclose the source, despite the obvious relevance of additional supply sources to establishing a dangerous probability of success in an alleged attempt to monopolize.

Although summary judgment should be used cautiously in antitrust cases, *Poller v. CBS, Inc.,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the district court correctly granted defendants' motion in the case at bar. ASI has failed to produce any significant probative evidence tending to show the existence of an illegal conspiracy or of unlawful price discrimination in the sale of a commodity. A plaintiff may not drag its feet in initiating discovery, refuse to submit to discovery of important evidence, fail to come forward with basic facts in its possession, and then point to the confusion thus engendered as evidence of genuine issues of material fact requiring resolution at trial. As the Supreme Court observed in *First National Bank v. Cities Service Co.,* 391 U.S. 253, 290–291, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569, 593 (1968):

[W]hile we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint.

In the absence of such evidence, summary judgment is proper when an inference of no conspiracy is more probable than the plaintiff's asserted inference of conspiracy. *Id.* at 280, 88 S.Ct. at 1588, 20 L.Ed.2d at 586. Accordingly, the district court's grant of summary judgment in favor of the defendants is

AFFIRMED.