ORVAL SHEPPARD REAL ESTATE
COMPANY, INC., Plaintiff,

v.

VALINDA FREED & ASSOCIATES,
INC., etc., et al., Defendants,

v.

Orval H. SHEPPARD,
Third-Party Defendant.

Civ. A. No. 82–088–S.

United States District Court,
M.D. Alabama, S.D.

April 25, 1985.

Coleman Yarbrough and John T. Alley, Jones, Murray, Stewart & Yarbrough, Montgomery, Ala., for plaintiff.

Kenneth T. Fuller & Joe Cassady, Cassady, Fuller & Marsh, Enterprise, Ala., for Valinda Freed & Associates, Valinda Freed, Faye Watts, Fireside Realty, Sarah H. Stoutamire, Sadïe C. Trail, Realty One, Inc., Rita Proctor.

Joe S. Pittman & Stafford Pittman, Pittman & Whittaker, Enterprise, Ala., for William H. Jenkins.

J.E. Sawyer, Jr., Rowe, Rowe & Sawyer, Enterprise, Ala., for Town & Country Real Estate, Jerry Austin, Ross R. Cotter, Jr. and Mamie Myers.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This is a private antitrust lawsuit seeking treble damages and involving several major real estate agencies in Enterprise, Alabama. It is premised on sections one and two of the Sherman Act, 15 U.S.C.A. §§ 1, 2, and section four of the Clayton Act, 15 U.S.C.A. § 15(a). The plaintiff, Orval Sheppard Real Estate Company, Inc.

("Sheppard Real Estate") of Enterprise,[1] has charged the defendants, several other local real estate agencies and their agents, with a boycott conspiracy; and one of the defendant agencies and its agent have filed a counterclaim and a third-party claim charging Sheppard Real Estate and its former owner with conspiracy to fix prices and attempted monopolization.

Based upon the evidence received during a nonjury trial, the court finds that all claims are without merit.

## I.

In the late 1970's and early 1980's, Sheppard Real Estate was one of approximately twelve active real estate agencies selling used homes in Enterprise, Alabama. The practice in the community at the time was that an agency would agree to "list" a used home—that is, show and attempt to sell the home—in return for a commission payment of a set percentage of the selling price of the home, should the agency sell the home.

In January 1981, in an effort to increase sales in a deteriorating real estate market, Sheppard Real Estate adopted a new policy of charging a flat commission fee of $1995, irrespective of the selling price of the property. It expected that the lower fee to homeowners would result in substantially more listings and thus greater profits for the agency. Previously, it had followed the community practice of charging homeowners a commission rate generally between 5 and 6% of the sales price of the property.

At that time, most major agencies in Enterprise participated in "cobroking" arrangements with each other. Each arrangement was based upon an informal and unwritten agreement between two agencies that allowed one of the agencies to show and sell the homes listed by the other, with the two agencies splitting the sales commission, according to a previously agreed upon division, for any home sold under the arrangement. These agreements increased an agency's chances of selling a home.

Sheppard Real Estate intended to continue to cobroke under the flat fee. It offered to pay $1000 of its flat fee commission to any competing agency that sold a home listed with Sheppard; and, in return, it expected to receive only $1000 for any competing agency's home sold by Sheppard Real Estate, even though the competing agency charged its traditional commission of 5 to 6%.[2]

Almost immediately upon learning of the new flat fee, several other major agencies declined to cobroke with Sheppard Real Estate because of the fee. These agencies were Valinda Freed & Associates, Inc., Fireside Realty, Inc., Realty One, Inc., Town & Country Real Estate, Inc., and Bill Jenkins and Associates.[3]

Later, agents employed by two of the five defendant agencies—William H. Jenkins, Sr., the owner of Bill Jenkins & Associates, and Sarah Stoutamire, the president of Fireside Realty, Inc.—attempted to con-

---

1. Over the years, the plaintiff has been known by several names. For simplicity, the court has referred to the plaintiff throughout this opinion by only the name given in the style of this case.

2. Sheppard Real Estate actually offered two versions of its flat fee to homeowners:
   (A) A "FLAT FEE" in the amount of $1,995.00, irrespective of whether the property is sold by the agent, a co-broking agency, the owner(s), or any other party or parties.
   * * *
   (B) A "FLAT FEE" in the amount of $1,995.00 to be paid in the event the property is sold by the agent or owner(s)—OR—in the event that the property is sold by an agency other than Holly Realty Company, Inc./Flat Fee Broker-

age on a co-broking basis. Even in this event the owner(s) shall agree to pay as a sales commission a "FLAT FEE" of $1,000.00 plus an amount equal to 2½% of the contract sales price of the property.
No homeowner selected the second alternative. Therefore, the first alternative is in effect the only one relevant here.

3. One or two of these agencies refused to cobroke with Sheppard Real Estate for reasons other than its flat fee. Before Sheppard Real Estate even went to the flat fee, they had either already ceased cobroking with the agency or intended to do so. The flat fee was an additional reason not to cobroke with Sheppard Real Estate.

vince one or two other agencies in Enterprise not to cobroke with Sheppard Real Estate. They were unsuccessful. Except for these efforts, there is no evidence that any of the agents of the five defendant agencies attempted to influence other agencies, or each other.

Sheppard Real Estate's listings rose dramatically after it adopted the flat fee system. However, when the other major agencies refused to cobroke, Sheppard Real Estate was unable to sell its listed homes as expected and its listings fell just as dramatically. The owner of Sheppard Real Estate eventually sold the agency to others, who immediately abandoned the flat fee and returned to the previous 5 to 6% commission rate.

Sheppard Real Estate has now brought this lawsuit against the following agencies and their agents: Valinda Freed & Associates, Inc. and agent Valinda K. Freed; Fireside Realty, Inc. and agents Sarah H. Stoutamire, and Sadie C. Trail; Realty One, Inc. and agent Rita Proctor; Town & Country Real Estate, Inc. and agents Jerry Austin, Ross R. Cotter, Jr., and William Marvin Cotter; and Bill Jenkins & Associates and agent William H. Jenkins, Sr. The lawsuit charges that these defendants entered into a conspiracy not to cobroke with Sheppard, in violation of federal antitrust laws.

Two of the defendants, Bill Jenkins & Associates and its agent, William H. Jenkins, Sr., have filed a counterclaim against Sheppard Real Estate and a third-party claim against its former owner, Orval H. Sheppard, charging that Sheppard Real Estate and its franchisee engaged in price fixing and attempted monopolization, in violation of the antitrust laws. The evidence reflected that Sheppard Real Estate's franchisee, located in Daleville, Alabama, adopted the flat fee shortly after Sheppard Real Estate did.

## II.

■ Sheppard Real Estate charges the defendants with violating section one of the Sherman Act, 15 U.S.C.A. § 1, and seeks treble damages under section four of the Clayton Act, 15 U.S.C.A. § 15(a).[4]

### A.

To recover under these antitrust provisions, a plaintiff must establish three elements. The plaintiff must show that the defendant, in violation of section one of the Sherman Act, (1) entered into "a contract, combination ..., or conspiracy," which was (2) "in restraint of trade or commerce," 15 U.S.C.A. § 1; and the plaintiff must further show (3) that it was damaged by the violation, thereby entitling it to treble damages under section four of the Clayton Act.

■ As to the first element, section one of the Sherman Act does not prohibit independent business decisions and actions. A real estate agency generally has a right to refuse to cobroke with a competing agency for reasons sufficient to itself, including because it thinks the other agency is acting unfairly in trying to undermine its trade, provided its refusal stems from independent decision and not from some agreement, tacit or expressed. *Monsanto Co. v. Spray-Rite Service Corporation*, —— U.S. ——, ——, 104 S.Ct. 1464, 1469, 79 L.Ed.2d 775 (1984); *Theatre Enterprises v. Paramount Film Distributing Corporation*, 346 U.S. 537, 541, 74 S.Ct. 257, 259–60, 98 L.Ed. 273 (1954). Section one requires some agreement, express or implied, between two or more persons. *Monsanto Co., supra*.

■ As to the second element, section one of the Sherman Act does not prohibit all agreements that restrain trade or commerce. The section is understood to prohibit only those that impose an "unreason-

---

**4.** The jurisdictional requirement for the Sherman Act is that the "plaintiff show (1) that the local activity has a (2) substantial effect on (3) interstate commerce." *Shahawy v. Harrison*, 755 F.2d 1432, 1436 (11th Cir.1985). This requirement has been met here. Enterprise's eco-

nomic center is a military installation. A large number, over 50%, of the used home sales by the plaintiff and the defendants involve persons from other states. Also, many if not most of the homes are federally financed and insured.

able restraint," *N.C.A.A. v. Board of Regents of the University of Oklahoma,* — U.S. —, —, 104 S.Ct. 2948, 2959, 82 L.Ed.2d 70 (1984). However, certain agreements, including concerted refusals to deal and group boycotts of the type alleged here, have generally long been held to be *per se* unreasonable and always illegal. *E.g., United States v. General Motors Corporation,* 384 U.S. 127, 145–46, 86 S.Ct. 1321, 1330–31, 16 L.Ed.2d 415 (1966); *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 212, 79 S.Ct. 705, 709, 3 L.Ed.2d 741 (1959).[5]

Finally, as to the third element, section four of the Clayton Act requires that a plaintiff who has demonstrated a Sherman Act violation also prove an injury to its business from the violation and some indication of the amount of damage done. *Construction Aggregate Transport, Inc. v. Florida Rock Industries, Inc.,* 710 F.2d 752, 782 (11th Cir.1983). "The plaintiff must introduce substantial probative facts demonstrating that some damage flowed from the unlawful conspiracy." *Id.*

### B.

■ Admittedly, Sheppard Real Estate has shown parallel conduct by the defendants. All the defendants refused to cobroke with Sheppard Real Estate after it went to a flat fee. However, parallelism by itself does not establish an agreement or, phrased differently, constitute a Sherman Act offense. *Theatre Enterprises,* 346 U.S. at 541, 74 S.Ct. at 259–60; *Aviation Specialties, Inc. v. United Technologies Corporation,* 568 F.2d 1186, 1192 (5th Cir.1978). Rather, parallel conduct is a factor "to be weighed, and generally to be weighed heavily." *Morton Salt Company v. United States,* 235 F.2d 573, 577 (10th

Cir.1956). There must be parallelism accompanied by *some other fact* to support a finding of an agreement necessary to establish a violation of section one of the Sherman Act. *Theatre Enterprises,* 346 U.S. at 541, 74 S.Ct. at 259–60.

■ This "some other fact" may take many forms. *See* P. Areeda, *Antitrust Analysis* ¶ 325 (3d ed. 1981). In *Aviation Specialties, Inc.,* the former Fifth Circuit observed that the following scenario could support a section one violation: "significant probative evidence ... that the defendants engaged in (1) consciously parallel action, (2) which was contrary to their economic self-interest so as not to amount to a good faith business judgment." 568 F.2d at 1192.

Here, the court finds that the defendant agencies decided to refuse to cobroke with Sheppard Real Estate *without consulting one another.* They acted immediately, almost without time to consult one another and engage in a concerted plan. This conclusion is supported by evidence that these agencies acted in their economic self-interest. They were deeply concerned that their participation would simply assist Sheppard Real Estate in taking over the local market and driving them out of business. The evidence also reflects that some of the agencies reasonably believed that the flat fee was economically not feasible in the area, in particular if adopted by several major agencies. Sheppard Real Estate has, at most, shown only parallel conduct by the defendant agencies. There is no evidence, direct or circumstantial, linking the agencies' conduct into an agreement, express or implied. Sheppard Real Estate has therefore failed to establish that the defendants'

---

5. The court would emphasize that concerted refusals to deal and group boycotts are *per se* unreasonable *in general.* Most recently, the Supreme Court has emphasized that "there is often no bright line separating *per se* from Rule of Reason analysis. *Per se* rules may require considerable inquiry into market conditions before the evidence justifies a presumption of anticompetitive conduct." *N.C.A.A.,* — U.S. at — n.

26, 104 S.Ct. at 2962 n. 26. *See also Jefferson Parish Hospital District No. 2 v. Hyde,* — U.S. —, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984); P. Areeda, *Antitrust Analysis* ¶ 370 (3d ed. 1981) ("there may be restraints with some boycott characteristics that are not or should not be automatically unlawful").

Here, the conduct alleged is clearly *per se* unreasonable.

refusal to cobroke constituted a violation of section one of the Sherman Act.[6]

■ However, the evidence does reflect that, after the defendant agencies independently decided not to cobroke with Sheppard Real Estate, agents of two of these agencies attempted to influence one or two other agencies to follow suit. These two agents were defendants William H. Jenkins, Sr. and Sarah Stoutamire.

The actions of Jenkins and Stoutamire violated section one of the Sherman Act. Their conduct, first, constituted an agreement between two persons, and, second, if successful would have amounted to a group boycott, a *per se* unreasonable restraint here. However, Sheppard Real Estate may not recover against Jenkins and Stoutamire. Jenkins and Stoutamire were unsuccessful. Sheppard Real Estate has therefore suffered no damages as a result of the illegal actions of these two defendants.

### III.

■ The counterclaim and third-party claim filed by defendants Bill Jenkins & Associates and its agent, William H. Jenkins, Sr., charge Sheppard Real Estate and its former owner with conspiring to fix prices, in violation of section one of the Sherman Act. Treble damages are sought under section four of the Clayton Act. The charge is meritless.

As already stated, these two defendants allege that Sheppard Real Estate and its franchisee conspired to fix prices at a flat fee of $1995. First, there is no evidence, direct or circumstantial, that Sheppard Real Estate and its franchisee engaged in anything other than parallel behavior. The franchisee was free under the franchise agreement to set its own commission rate;

and the evidence reflects that the franchisee independently adopted the flat fee because it, like Sheppard Real Estate, believed the fee to be economically sound. But second and most importantly, there is no evidence of damages to the defendants flowing from any alleged price fixing.

These two defendants also charge that Sheppard Real Estate and its former owner attempted to monopolize in violation of section two of the Sherman Act, 15 U.S.C.A. § 2, and they seek treble damages under section four of the Clayton Act. This charge is also meritless.

■ Section two of the Sherman Act prohibits monopolization and attempts to monopolize. A violation of section two does not require concerted action. *National Independent Theatre Exhibitors, Inc. v. Charter Financial Group, Inc.*, 747 F.2d 1396, 1402 (11th Cir.1984). Rather, wholly unilateral conduct, "when accompanied by the intent to monopolize and the requisite degree of market power, may constitute a violation of section 2." *Id. See also Aviation Specialties, Inc.*, 568 F.2d at 1192. Here, assuming that Sheppard Real Estate and its former owner intended to dominate a market, the court must nevertheless conclude from the evidence that the agency "plainly lacked sufficient market power to present a dangerous probability of success."[7] *National Independent Theatre Exhibitors, Inc.*, 747 F.2d at 1402. Furthermore, the defendants have failed to demonstrate any damages flowing from the alleged attempt to monopolize.

### IV.

In conclusion, the court holds that all charges of antitrust violations are without merit.[8] An appropriate judgment will be entered.

6. The evidence further reflects that agencies in Enterprise frequently refused to cobroke with each other for business as well as personal reasons. It was not unusual for one agency to break off relations with another. *See supra* note 3.

7. The parties differ as to whether the appropriate market should be Enterprise or Enterprise

and Daleville. The result would be the same irrespective of the market chosen.

8. Those asserting antitrust violations have also rested their claims on Alabama law. They have not shown how Alabama law would dictate a different result.