**AVENTURA CABLE CORPORATION,**
a Colorado corporation, Plaintiff,

v.

**RIFKIN/NARRAGANSETT      SOUTH FLORIDA CATV LIMITED PARTNERSHIP d/b/a Goldcoast Cablevision, a Florida limited partnership; R/N South Florida Cable Management Limited Partnership, a Florida limited partnership; Rifkin/Narrangansett South Florida CA Management Corp., a Florida corporation; and Rifkin/Miami Management Corp., a Colorado corporation, Defendants.**

No. 95–2344–CIV.

United States District Court,
S.D. Florida.

Aug. 18, 1996.

Adam Lamb, David Azrin, Law Office of David T. Azrin, P.A., Miami, FL, Howard S. Weinberg, P.A., Miami, FL, for Plaintiff.

Hector Rivera, Terry Bienstock, Bienstock & Clark, Miami, FL, for Defendant.

### ORDER ON PENDING MOTIONS

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss, or in the Alternative, to Refer Matter to FCC Under Primary Jurisdiction, filed November 15, 1995, and Defendants' Motion for More Definite Statement, filed November 15, 1996. For the reasons set forth below, the Court grants in part and denies in part the defendants' motion to dismiss and denies the defendants' motion for a more definite statement.

### BACKGROUND

According to the amended complaint, Plaintiff Aventura Cable Corporation ("Aventura") provides cable television service via a satellite reception device placed directly on top of apartment buildings. The defendants (collectively referred to as "Goldcoast") have formed a limited partnership that provides cable television service via equipment running over the public easements pursuant to a nonexclusive franchise awarded by the City of Miami Beach.

Aventura alleges that Goldcoast controls 90% of the market power over the Miami Beach high-rise cable television market. Morton Towers is a high-rise apartment complex in Miami Beach that purportedly received television cable service exclusively from Goldcoast. Following a sealed bidding process, Morton Towers allegedly selected Aventura to provide cable television services and, in July of 1995, Aventura began installing its equipment. According to Aventura, Goldcoast subsequently drastically reduced

the price of its cable television service to Morton Towers residents and used advertising that disseminated false and disparaging information about Aventura in an attempt to force Aventura out of the market.

In its amended complaint, Aventura alleges violations of Title 15, United States Code, Section 2 ("the Sherman Anti–Trust Act"), of Title 47, United States Code, Section 543(d) ("the Federal Cable Act"), of Florida Statute Chapter 542.19 ("the Florida Antitrust Statute") and of Florida Statute Chapter 501.211(1) ("the Florida Deceptive and Unfair Trade Practices Act"), and alleges state common law claims of tortious interference of a business relationship and false advertising. The plaintiff seeks money damages and injunctive relief. The defendants have moved to dismiss the federal claims or, alternatively, to refer the matter to the Federal Communications Commission ("FCC"), and have moved for a more definite statement.

## DISCUSSION

### I. Motion to Dismiss

#### A. Standard of Review

■ To state a claim, *Fed.R.Civ.P.* 8(a) requires, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." The court must "take the material allegations of the complaint and its incorporated exhibits as true, and liberally construe the complaint in favor of the Plaintiff." *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 798 (11th Cir.1988) (citation omitted), *aff'd,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The law in this Circuit is well-settled that "the 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.1988) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). The moving party bears a heavy burden. *St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.,* 795 F.2d 948, 953 (11th Cir.1986). In the case of antitrust litigation, however, the Supreme Court has mandated that the district courts "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Associated Gen. Contractors, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983).

#### B. Analysis

##### 1. Count I & Count II

In Count I and Count II of the amended complaint, the plaintiff seeks damages and injunctive relief, respectively, for violations of the Sherman Anti–Trust Act. The Sherman Anti–Trust Act precludes any "attempt to monopolize any part of the trade or commerce among the several States...." 15 U.S.C. § 2.

###### a. Jurisdiction

■ As a preliminary matter, the defendants contend that the plaintiff has failed to satisfy the jurisdictional prerequisite of the Sherman Anti–Trust Act by showing that the anticompetitive activity significantly affects interstate commerce. *See Orval Sheppard Real Estate Co., Inc. v. Valinda Freed & Assocs., Inc.,* 608 F.Supp. 354, 357 n. 4 (M.D.Ala.1985), *aff'd,* 800 F.2d 265 (11th Cir. 1986). According to the defendants, their alleged anticompetitive conduct occurred wholly within the State of Florida, specifically within Morton Towers.

■ In order to establish jurisdiction, Aventura must allege a relationship between the activity involved and some aspect of interstate commerce. *McLain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980). The plaintiff alleges that it purchases much of its equipment and programming from outside the state. Amended Complaint, at ¶ 30. The distribution within Florida of interstate programming to the television-watching "public is an inseparable part of the flow of the interstate commerce involved." *Lorain Journal Co. v. United States,* 342 U.S. 143, 152, 72 S.Ct. 181, 185, 96 L.Ed. 162 (1951). Therefore, Goldcoast's alleged efforts to preclude access to such out of state program-

ming significantly affects interstate commerce. Since the plaintiff has stated the interstate nature of the conduct involved, it has adequately alleged a jurisdictional prerequisite for its anti-trust claims.

### b. Failure to State a Claim

■ In order to state a claim of attempted monopolization, a plaintiff must allege four elements: (i) relevant market in terms of both geography and product; (ii) specific intent to monopolize; (iii) conduct in furtherance of such an attempt; and (iv) a dangerous probability of success in monopolizing the relevant market. *TV Communications Network, Inc. v. ESPN, Inc.*, 964 F.2d 1022, 1025 (10th Cir.1992), *cert. denied,* 506 U.S. 999, 113 S.Ct. 601, 121 L.Ed.2d 537 (1992); *T. Harris Young & Assocs., Inc. v. Marquette Elecs., Inc.*, 931 F.2d 816, 823 (11th Cir.1991), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991).

### (i) Relevant Market

■ With regard to the first element of a claim of attempted monopolization, Aventura identifies the relevant product market as "cable television service." Amended Complaint, at ¶¶ 11, 12. Goldcoast contends that Aventura failed to adequately define the relevant product market because a plaintiff must allege all products that are reasonably interchangeable. However, "[t]he definition of the relevant market is essentially a factual question...." *U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.*, 7 F.3d 986, 994 (11th Cir.1993). Determining "the reasonable interchangeability of use ... between a product and its substitutes constitutes the outer boundaries of a product market" and is best left for a later stage of the proceedings. *Id.* at 995 (citing *Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1523, 8 L.Ed.2d 510 (1962)). Therefore, Aventura has sufficiently stated a relevant product market to survive a motion to dismiss.

Goldcoast further contends that Aventura refers to various geographic markets. Contrary to this contention, however, Aventura consistently refers to the "Miami Beach high-rise market" as the relevant geographic market. *See, e.g.,* Amended Complaint, at ¶¶ 13, 15, 19, 24, 29, 30, 31, 34. Therefore, Aventura has adequately alleged a relevant geographic market to survive a motion to dismiss.

### (ii) Specific Intent

■ The specific intent element of a claim of attempted monopolization "can be satisfied by proof of predatory pricing." *McGahee v. Northern Propane Gas Co.,* 858 F.2d 1487, 1493 (11th Cir.1988), *cert. denied,* 490 U.S. 1084, 109 S.Ct. 2110, 104 L.Ed.2d 670 (1989) (citing *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)). Aventura alleges that Goldcoast engaged in a predatory pricing scheme by deliberately sacrificing "its short-term profits with the intent to recoup those profits in the long run from the resultant monopoly ... [in] the Miami Beach high-rise market." Amended Complaint, at ¶ 24. Aventura further alleged the existence of such a scheme by detailing the "drastically reduced" prices offered by Goldcoast to Morton Tower residents. Amended Complaint, at ¶¶ 24–27.

Goldcoast contends, however, that Aventura cannot succeed on such a claim. According to Goldcoast, Aventura cannot establish the elements of a predatory pricing scheme; namely, below-cost pricing that drives rivals from the market and recoupment of those lost profits when the "predator" acquires a monopoly. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 222–23, 113 S.Ct. 2578, 2587–88, 125 L.Ed.2d 168 (1993). Goldcoast asserts that such a scheme is impossible since its rates are regulated. Goldcoast's contention is premature. Aventura has sufficiently alleged the existence of a predatory pricing scheme in order to suggest Goldcoast's specific intent to create a monopoly. Aventura's success *vel non* in proving these allegations must await a later stage of the proceedings.

### (iii) Conduct in Furtherance of an Attempt

With regard to the third element of its claim, Aventura has alleged that Goldcoast engaged in anticompetitive conduct designed to acquire a monopoly over the market. Aventura's allegations regarding Goldcoast's initiation of a predatory pricing scheme that would force Aventura out of the market and

allow Goldcoast to obtain a monopoly is sufficient to demonstrate conduct in furtherance of an attempt to monopolize the market.

### (iv) Dangerous Probability of Success

■ To establish the fourth element of a claim of attempted monopolization, a plaintiff must allege that "the defendant [is] close to achieving monopoly power." *U.S. Anchor*, 7 F.3d at 994. Aventura alleges that "Goldcoast controls over 90% of the Miami Beach high-rise market. Goldcoast enjoys such dominance in the market because it is the only cable company with access to the public easements...." Amended Complaint, at ¶ 15. Such an allegation of market control is sufficient to demonstrate that the defendant had a dangerous probability of success. *See Colorado Interstate Gas Co. v. Natural Gas Pipeline Co.*, 885 F.2d 683, 694 n. 18 (10th Cir.1989), *cert. denied*, 498 U.S. 972, 111 S.Ct. 441, 112 L.Ed.2d 424 (1990) (noting that courts generally require a minimum market share of between 70% and 80% to indicate that a defendant has monopoly power). Since Aventura has adequately alleged the four elements of the claim of attempted monopolization, the Court denies Goldcoast's motion to dismiss with regard to Counts I and II.

### 2. Count III

In Count III, Aventura asserts a claim for violation of the Federal Cable Act ("FCA"). Specifically, Aventura alleges that Goldcoast's predatory pricing scheme violated the FCA requirement that a cable operator maintain "a rate structure, for the provision of cable service, that is uniform throughout the geographic area in which cable service is provided over its cable system." 47 U.S.C. § 543(d).

■ Goldcoast contends that Section 543(d) of the FCA does not create a private right of action. Aventura counters that the statute creates an *implied* private right of action. The Supreme Court utilizes four factors to determine whether a private remedy is implicit in a statute that does not expressly provide one. They are:

First, is the plaintiff one of the class for whose *especial* benefit the statute was en-

acted ... [; s]econd, is there any indication of legislative intent ... either to create such a remedy or to deny one ... [; t]hird, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy ... [; a]nd finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (emphasis in original) (citations omitted).

■ With regard to the first factor, the Court must determine whether Congress intended to confer upon cable operators an "especial" benefit. The uniform rate provision of the FCA is designed to preclude "charging different subscribers different rates with no economic justification and unfairly undercutting competitors' prices." *Time Warner Entertainment Co., L.P. v. F.C.C.*, 56 F.3d 151, 190 (D.C.Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 911, 133 L.Ed.2d 842 (1996) (quoting *Implementation of Sections of the Cable Television Consumer Protection & Competition Act of 1992: Rate Regulation, Third Order on Reconsideration*, 9 F.C.C.R. 4316, 4327 (1994)). As such, the provision benefits *both* cable subscribers *and* nascent or expanding cable operators. *See Time Warner*, 56 F.3d at 190. Upon such a determination, this Court cannot find that Section 543(d) is intended for the "especial benefit" of cable operators. *See Mallenbaum v. Adelphia Communications Corp.*, 1994 WL 724981 *6 (E.D.Pa. Dec. 29, 1994), *aff'd*, 74 F.3d 465, 469–70 (3rd Cir.1996) (finding that since both cable subscribers and cable operators benefit, cable subscribers are not the "especial beneficiaries" of the FCA). Aventura's reliance upon *Centel Cable Television v. Admiral's Cove Associates*, 835 F.2d 1359 (11th Cir.1988) is inapposite. In *Centel*, the Eleventh Circuit determined that Congress intended to create a private right of action under section 621(a)(2) of the FCA because that section granted an "especial benefit" to one specific group. *Centel*, 835 F.2d at 1362. Since this Court cannot label cable operators "especial

beneficiaries" of section 543(d) of the FCA, it cannot conclude that a private remedy is implicitly available to cable operators.

Pursuant to the second *Cort* factor, this Court must determine whether Congress intended to provide a private cause of action. The Supreme Court "has noted that there [is little] reason to infer a private remedy in favor of individual persons where Congress, rather than drafting the legislation with an unmistakable focus on the benefited class, instead has framed the statute simply as a general prohibition or a command...." *Universities Research Ass'n v. Coutu,* 450 U.S. 754, 772, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981). In *Coutu,* the Supreme Court held that a minimum wage provision in the Davis–Bacon Act that was designed for the benefit of construction workers did not confer rights directly on those individuals. Rather, the statute was "simply phrased as a directive" regarding the disbursement of funds. *Id.* Similarly, the uniform rate provision of the FCA is phrased as a directive to cable operators: "A cable operator shall have a rate structure ... that is uniform...." § 543(d). Nothing in the provision suggests an intention to confer rights directly on individuals who may benefit from the provision.

Moreover, "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 572, 99 S.Ct. 2479, 2487, 61 L.Ed.2d 82 (1971). Congress has expressly provided some private rights under the FCA. For example, subscribers have a private right of action for violation of their privacy (47 U.S.C. § 551(f)); cable operators may appeal a franchising authority's denial of a franchise renewal request (47 U.S.C. § 546(e)); a person may sue in federal court if aggrieved by the failure of a cable operator to make available channel capacity (47 U.S.C. § 532(d)); and a person harmed by unauthorized interception of cable service may sue in federal court (47 U.S.C. § 553(c)). Therefore, Congress' express provision of private remedies under several sections of the FCA militates heavily against a finding that Congress chose to *impliedly* provide a private remedy under another section of the FCA.

Finally, other courts agree that no implied right of action exists under Section 543 of the FCA. *See, e.g., In re Comcast Corp.,* 1994 WL 622105 *4–5 (E.D.Pa. Nov. 10, 1994), *aff'd,* 77 F.3d 462 (3rd Cir.1996); *Kentucky ex rel. Gorman v. Comcast Cable of Paducah, Inc.,* 881 F.Supp. 285, 287–88 (W.D.Ky. 1995); *Florida v. Comcast Corp.,* No. 94–40316 (N.D.Fla. Sept. 28, 1994) (order granting plaintiff's motion to remand): *Pennsylvania v. Comcast Corp.,* 1994 WL 568479 *2 (E.D.Pa. Oct. 11, 1994) (order remanding case). This Court joins its sister federal courts. Since the first two *Cort* factors do not support a finding of an implied right under section 543(d), it is unnecessary to address the remaining factors. *See Mallenbaum,* 74 F.3d at 470. Therefore, the Court grants with prejudice Goldcoast's motion to dismiss Count III.

## II. Motion for More Definite Statement

### A. Standard of Review

█ Pursuant to *Fed.R.Civ.P.* 12(e), a party may move for a more definite statement when a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading...." Federal courts generally disfavor such motions. *See Campbell v. Miller,* 836 F.Supp. 827, 832 (M.D.Fla.1993). The motion is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail. *See Campbell,* 836 F.Supp. at 832; *Frazier v. Southeastern Pennsylvania Transp. Auth.,* 868 F.Supp. 757, 763 (E.D.Pa.1994).

### B. Analysis

Goldcoast contends that Count I and Count II of the amended are too vague to enable Goldcoast to frame a response. The Court already has determined, however, that Aventura has adequately stated a claim for relief in Counts I and II. Therefore, the Court cannot find that Counts I and II are vague or ambiguous and denies the motion for a more definite statement.

## CONCLUSION

Based upon the foregoing considerations, it is

ORDERED AND ADJUDGED as follows:

1. Defendants' Motion to Dismiss, or in the Alternative, to Refer matter to FCC Under Primary Jurisdiction, filed November 15, 1995, is GRANTED IN PART AND DENIED IN PART. Said motion is GRANTED to the extent that it seeks the dismissal of Count III. Count III is DISMISSED WITH PREJUDICE. Said motion is DENIED in all other respects.

2. Defendants' Motion for More Definite Statement, filed November 15, 1996, is DENIED.

3. The plaintiff has twenty (20) days from the date of this Order to file a second amended complaint that complies with this Order. The failure of the plaintiff to file a second amended complaint within that timeframe SHALL RESULT in the *sua sponte* dismissal of this action. The defendants shall have fifteen (15) days from the date of service of a second amended complaint to file a response.