**FRAN WELCH REAL ESTATE SALES, INC., Appellant,**

v.

**The SEABROOK ISLAND COMPANY, INC., Appellee.**

No. 85–2057.

United States Court of Appeals, Fourth Circuit.

Argued April 10, 1986.

Decided Jan. 20, 1987.

---

Harry A. Swagart, III, Columbia, S.C., for appellant.

Lee H. Simowitz (Gerald A. Connell, Janet Rehnquist, Baker & Hostetler, Washington, D.C., Robert H. Hood, Robert H. Hood & Associates, Charleston, S.C., on brief), for appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

Fran Welch Real Estate Sales, Inc. brought this action against Seabrook Island Company, alleging violations of §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2 (West Supp.1986), and pendent claims of intentional interference with contractual relations in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39–5–10 *et seq.* (Law. Co-op 1976). Fran Welch also sought a preliminary injunction.

On cross-motions for summary judgment, the district court granted judgment for the defendants on all of the Sherman Act § 1 claims and declined to issue an injunction. It reserved ruling on the remaining claims. 621 F.Supp. 128.

## I.

Seabrook Island is a barrier island on the Atlantic Ocean off the coast of South Carolina about 23 miles south of Charleston. It contains approximately 2,100 acres on which Seabrook Island Company has been developing a luxury, residential resort community. Its developmental and managerial efforts have resulted in what is said to be an enviable success.

The parties agree that much of the success in the development of Seabrook Island is due to the concerted efforts of Seabrook Island Company and the island's residents to maintain the island's natural beauty and to restrict public access to it. There are covenants running with the land containing extensive restrictions broadly restricting or prohibiting activities or structures inconsistent with the island's character. All commercial signs, including "For Sale" and "For Rent" signs, are prohibited. Privacy and security are maintained by a limited access policy. Access is obtainable only through a guarded gate, where a visitor may obtain an admission pass only upon proper identification and substantiation of an appropriate purpose for the visit.

The plaintiff is a family-run real estate brokerage firm dealing in residential properties on Kiawah Island, Johns Island and Seabrook Island. It has been successful since its inception in 1981. It has boasted as being "in the top group in the number of sales" on Seabrook Island.

Fran Welch Real Estate readily agrees that the existence of the restrictive covenants and the limited access policy are "key selling points" for Seabrook Island properties. Nevertheless, it alleged that the prohibition of its "For Sale" and "For Rent" signs and the requirement that its sales persons obtain admission passes are violations of the antitrust laws. Fran Welch also raised other claims concerning exclusive listing by property owners with Seabrook Island Company and a discontinued policy by which Seabrook had restricted its co-brokerage arrangements.

The district court granted summary judgment for the defendant on all of the

Sherman Act § 1 claims, except for one alleging an unlawful tying arrangement when the defendant obtained an exclusive listing by a promoter to whom the defendant had sold a tract of land for the construction of speculative houses. It denied the injunction requested by the plaintiff, and the plaintiff has appealed all adverse rulings including the denial of summary judgment on its unlawful tying claim.

## II.

■ Ordinarily in exercising our jurisdiction under 28 U.S.C.A. § 1292(a)(1) (West Supp.1986), we look only for an abuse of the discretion lodged in the district judge. Here, however, the denial of the injunction was intimately bound up with other unappealable partial dispositions of some of the claims on the merits. Under those circumstances, an order denying an injunction is appropriately reviewable in greater detail. *See Data Cash Systems, Inc. v. JS & A Group, Inc.,* 628 F.2d 1038, 1040 (7th Cir. 1980); *Barrett v. Smith,* 530 F.2d 829, 830 (9th Cir.1975); *Erving v. Virginia Squires Basketball Club,* 468 F.2d 1064, 1067 (2d Cir.1972). The Sherman Act § 1 claims for which the district court granted summary judgment for the defendant have been "sufficiently illuminated" to permit us to decide the plaintiff's appeals as to those claims. 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice & Procedure* § 3921 at 16–17 (1977), 2 (Supp.1986).

■ So much may not be said for the order denying summary judgment to either party on the allegation of the unlawful tying arrangement. As to that claim, the district court felt that the facts were insufficiently developed, and its denial of summary judgment determined nothing. Decision as to that claim is best left to the district court. *Switzerland Cheese Association v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966).

## III.

The prohibition of commercial signs contributes to the maintenance of the "non-commercial character" of the island. Maintenance of that characteristic is attractive both to potential buyers and present owners. Every owner of Seabrook Island property is a member of the Property Owners Association of Seabrook Island. In January 1983, the association's board of directors unanimously adopted a resolution strongly supporting "the prohibition against commercial signs, including 'For Rent,' 'For Sale' and other similar signs as a positive stance for the protection of the unique natural beauty of the island." The Property Owners Association is entirely independent from Seabrook Island Company. Through its board of directors, it may modify restrictive covenants. Its strong support of this restriction substantially bolsters the aesthetic basis for its initial adoption.

■ It would be inappropriate to attempt to fashion a *per se* rule for this restriction, for the courts have had no "considerable experience" with such a restriction. *See United States v. Topco Associates,* 405 U.S. 596, 607–08, 92 S.Ct. 1126, 1133–34, 31 L.Ed.2d 515 (1972).

■ Nor can we find this restriction an unreasonable restraint of trade. The ban is complete, but it is nondiscriminatory. It applies to the Seabrook Island Company as to other real estate firms. There is evidence of its genesis, as its current support by the property owners, in aesthetic considerations. There is no evidence of an anticompetitive motive or purpose.

Many of the homes on Seabrook Island are second homes. Potential purchasers come from afar, and real estate dealers advertise Seabrook Island property in publications with regional, even national, circulation. There was testimony describing the almost infinite means by which real estate dealers contact potential customers, and the plaintiff itself has enjoyed considerable success in doing so. In the context of the restricted access to the island, there is no basis for an inference that the prohibition of signs on the properties is unreasonable.

This is not such a case as *Cantor v. Multiple Listing Service of Dutchess County, Inc.,* 568 F.Supp. 424, 431 (S.D.N.Y.1983). There, the Multiple Listing Service adopted a regulation requiring all of its members to use only property signs approved by the service. The regulation was enforced by imposition of fines and expulsion from the listing service. The plaintiffs were members of the service, and they also belonged to a national organization, Century 21. They wished to disclose that fact on their signs. They felt membership in Century 21 gave them a competitive advantage. The court found that the regulation was designed to deprive the plaintiffs of whatever advantage disclosure of their membership in Century 21 might have given them. Depriving the plaintiffs of that right was thought to increase the chances of other members of the listing service to earn shares in sales commissions.

In this case there was no such anticompetitive purpose or effect.

## IV.

From approximately March 1981 until August 1982, Seabrook Island Company would not accept purchaser referrals from brokers who had listings of Seabrook Island property for sale. It reasoned that such brokers would work hard to sell their own listings, and obtain a full commission, and would refer potential buyers to Seabrook only as a last resort. Brokers acting in the sale of Seabrook Island property objected to the practice, however, and Seabrook abandoned it in mid–1982.

The plaintiff alleged that the limited referral policy was a *per se* illegal group boycott that reduced the number of listings the plaintiff obtained on the island, and reduced its co-brokerage opportunities there.

■ Here, however, there is nothing remotely suggesting a concerted refusal to deal with Fran Welch. *See, e.g., United States v. General Motors Corp.,* 384 U.S. 127, 146, 86 S.Ct. 1321, 1331, 16 L.Ed.2d 415 (1966) (discussing concerted refusals to deal); *Silver v. New York Stock Exchange,* 373 U.S. 341, 347, 83 S.Ct. 1246, 1251, 10 L.Ed.2d 389 (1963) (same). At the most, there was a unilateral refusal to deal by Seabrook with Fran Welch. In the absence of an abuse of monopoly power, unproven here, such a refusal to deal is not a violation of the Sherman Act. *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *cf. Orval Sheppard Real Estate Co. v. Valinda Freed & Associates,* 608 F.Supp. 354, 357 (M.D.Ala.1985), *aff'd,* 800 F.2d 265 (11th Cir.1986).

Even if there were some kind of boycott, injury to Fran Welch is entirely speculative. If the restrictive policy, while in effect, caused some brokers to decline listings of property on Seabrook Island and to look solely to opportunities of co-brokerage with Seabrook, then this simply would have tended to make more listings available to Fran Welch. Moreover, near the end of the life of the restricted referral policy, Fran Welch boasted that it was "competing in the top group in the number of sales on [Seabrook Island] ... this year." It was managing its own sales and realizing full commissions.

Since there was no showing of any group practice denying the plaintiff access to any product or service in which it wished to deal, the limited referral policy was not a violation of § 1. *See J.T. Gibbons, Inc. v. Crawford Fitting Co.,* 704 F.2d 787, 792 (5th Cir.1983) (dismissing action for refusal to deal, because plaintiff did not prove that it was denied access to the product).

## V.

The plaintiff contends that a visitor access policy, as applied to its sales persons, is an unreasonable restraint of trade.

The visitor access policy was adopted by the board of directors of the Seabrook Island Property Owners Association. It was designed to protect the privacy and enhance the security of the island's residents. As implemented, the residents think that it enhances the quality of their lives on the island, and the plaintiff and other real estate agents use it as a prized selling point.

It is used to distinguish Seabrook Island from Kiawah Island and other otherwise comparable developments. Nevertheless, while praising the policy as applied to all other visitors, the plaintiff contends that it may not legally be applied to its sales personnel. Under the policy, a real estate broker, other than an employee of Seabrook Island Company, must obtain a written authorization from the owner of the property to be shown. That authorization must be presented to the security guard in order to obtain an admission pass. Additionally, no company may have more than three of its sales persons on the island at any one time.

It is apparent, however, that the plaintiff has lived comfortably with the policy. The witnesses could recall no occasion on which there was so much as a wish to have more than three of the plaintiff's salesmen on the island at any one time, and those salesmen have never experienced any difficulty in obtaining admission passes upon presentation of the owner's authorization. The record reflects only one incident where an agent was denied access, yet it involved some other broker not associated with the plaintiff.

Salesmen for the Seabrook Island Company have permanent passes. They need not get such entry clearance, and the three-person limit does not apply to them. Seabrook Island Company, however, is the island's developer. There is constant reason for the presence of its employees, and Seabrook is able to vouch for their character and integrity and to give general assurance that they will respect the privacy interests of the residents. The exception of the employees of Seabrook Island Company is a natural and reasonable one, and, since compliance with the rule by the plaintiff is, at most, minimally inconvenient, we agree with the district judge that its enforcement is not an unreasonable restraint of trade.

## VI.

Since we affirm the grant of summary judgment as to all of the § 1 claims adjudicated by the district court, we affirm its denial of an injunction as to those claims. As to the tying arrangement, we find no abuse of discretion in the district court's denial of injunctive relief. *See Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189, 193 (4th Cir.1977) (discussing standard of review for injunctive relief).

Accordingly, we affirm the partial summary judgment entered by the district court and the denial of injunctive relief. We remand to the district court for further proceedings on the tying arrangement claim and the other claims still pending in that court.

AFFIRMED AND REMANDED.