**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AMERICAN CANOE ASSOCIATION,
INCORPORATED; PROFESSIONAL
PADDLESPORTS ASSOCIATION; THE
CONSERVATION COUNCILOF NORTH
CAROLINA, INCORPORATED,
Plaintiffs-Appellees,

UNITED STATESOF AMERICA, acting
at the request and on behalf of the
Administrator of the United States
Environmental Protection Agency,
Intervenor-Appellee,

v.

MURPHY FARMS, INCORPORATED, d/b/a

Murphy Family Farms; D.M.
FARMSOF ROSE HILL,
Defendants-Appellants.

No. 99-1115

ALLIANCE FORA RESPONSIBLE SWINE
INDUSTRY; THE CONCERNED
CITIZENSOF TILLERY; THE NEUSE
RIVER FOUNDATION; RICK DOVE, a/k/a
The Neuse Riverkeeper; THE NORTH
CAROLINA ENVIRONMENTAL DEFENSE
FUND; NORTH CAROLINA COASTAL
FEDERATION; THE PAMLICO-TAR RIVER
FOUNDATION,
Amici Curiae.

Appeal from the United States District Court for the
Eastern District of North Carolina, at Wilmington.
James C. Fox, District Judge.
(CA-98-4-7-F(1), CA-98-19-7-F(1), CA-98-209-5-F(1))

Argued: December 1, 1999

Decided: March 29, 2000

Before WIDENER and LUTTIG, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge
for the District of South Carolina, sitting by designation.

_____

Dismissed in part and remanded in part by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** Richard Edward Schwartz, CROWELL & MORING,
Washington, D.C., for Appellants. Carolyn Smith Pravlik, TERRIS,
PRAVLIK & MILLIAN, L.L.P., Washington, D.C.; Jared A. Gold-
stein, Environment & Natural Resources Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees. **ON
BRIEF:** Sarah L. Seager, CROWELL & MORING, L.L.P., Washing-
ton, D.C.; Daniel G. Cahill, Mark A. Finkelstein, Laurie B. Gengo,
Reef C. Ivey, II, THE SANFORD HOLSHOUSER LAW FIRM,
Raleigh, North Carolina, for Appellants. Bruce J. Terris, TERRIS,
PRAVLIK & MILLIAN, L.L.P., Washington, D.C.; Lois J. Schiffer,
Assistant Attorney General, Paul G. Wolfteich, E. Ann Peterson,
Environment & Natural Resources Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C.; Gary S. Guzy,
Acting General Counsel, Robert G. Dreher, Deputy General Counsel,
Adam Sowatzka, Paul Bangser, Ciannat Howett, UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY, Washington, D.C.,
for Appellees. Donnell Van Noppen, III, Michelle B. Nowlin, Lyman
J. Gregory, III, SOUTHERN ENVIRONMENTAL LAW CENTER,
Chapel Hill, North Carolina, for Amici Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellants sow farms ("D.M. Farms") appeal from the district court's grant of a preliminary injunction requiring them to apply for a Clean Water Act permit because they made unauthorized discharges of pollutants into the waters of the United States. The sow farms also appeal from the district court's grant of appellees citizen groups' motion for partial summary judgment on their claim that the sow farms violated the Clean Water Act when they discharged without a permit.

For the reasons that follow, we decline to review the district court's grant of partial summary judgment and dismiss that part of the appeal. Additionally, we remand to the district court to determine whether D.M. Farms' claim opposing the preliminary injunction as invalid is moot.

I.

D.M. Farms has operated the Magnolia 4 Sow Farm ("MAG 4") in Sampson County, North Carolina, since 1995. The MAG 4 is home to 4,400 confined sows. Waste from the sows is released into a lagoon, where it undergoes anaerobic treatment, before being sprayed onto fields as fertilizer.

The MAG 4 is operated under a North Carolina Department of Environment and Natural Resources ("North Carolina DENR") Animal Waste Management Plan, which prohibits animal waste discharges to surface waters. J.A. 253f. Consequently, at no time prior to this litigation did D.M. Farms apply for a Clean Water Act ("CWA") National Pollution Discharge Elimination System ("NPDES") permit for the purpose of making discharges from the MAG 4.

It is undisputed that on two occasions, while operating under the North Carolina DENR Animal Waste Management Plan, MAG 4 made unauthorized discharges of animal waste into waters of the

United States as a result of runoff from spraying the fields. The first known discharge occurred on November 25, 1996. The North Carolina DENR discovered that wastewater from D.M. Farms' fields was running into a tributary of Six Runs Creek, and it recommended changes that D.M. Farms should make to its spray operation to correct the problem and fined the Farms. D.M. Farms alleges that the Farms paid the fines and modified their operation.

Another discharge occurred in July 1997, and the North Carolina DENR charged D.M. Farms a higher fine, in addition to recommending that the spray site that was the source of the discharge be removed from service. The Farms allege that they paid the fines and removed that site from service. Consistent with the North Carolina DENR's philosophy that an entity could correct the discharge problem in lieu of applying for a permit, at no time did DENR require D.M. Farms to apply for an NPDES permit.

On February 10, 1998, the American Canoe Association and other citizen groups (collectively "ACA") filed suit against D.M. Farms under the citizen suit provision of the CWA alleging violations of the CWA.[1] First, ACA alleged that D.M. Farms continuously violated the CWA by failing to obtain an NPDES permit after making unauthorized discharges, and second that the Farms violated the CWA each time it discharged without such a permit.[2]

The district court permitted the Environmental Protection Agency ("EPA") and the North Carolina DENR to participate in this case as intervenors or as amici curiae. EPA intervened against D.M. Farms,

_____

[1] The CWA citizen suit provision reads:

> any citizen may commence a civil action on his own behalf against any person . . . who is <u>alleged to be in violation of (A) an effluent standard or limitation under this chapter</u> or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.

33 U.S.C. § 1365(a)(1) (emphasis added).

[2] ACA made a third claim but withdrew it "on the understanding that the DENR had agreed with EPA to issue NPDES permits for [concentrated animal feeding operations]." J.A. 658.

4

and the DENR submitted an amicus curiae brief. In its brief, the DENR explained that, at the time ACA filed suit against D.M. Farms, it did not require facilities such as the MAG 4 facility to obtain NPDES permits after single discharge events if the facilities corrected the problem that caused the discharge. J.A. 530-31, 536, 539 (Amicus Curiae Br. of DENR). Instead, such facilities were required to have "no-discharge" permits issued by the State. However, as of June 11, 1998, after the commencement of this litigation, the DENR has changed its policy regarding issuance of NPDES permits to include issuance of permits to operations like the MAG 4 facility. J.A. 543.

ACA filed a motion for preliminary injunction prohibiting the Farms from operating the MAG 4 facility in violation of the CWA and requiring the Farms to obtain an NPDES permit. Additionally, ACA filed a motion for partial summary judgment on their second claim, that D.M. Farms violated the CWA when it discharged pollutants without an NPDES permit on at least two occasions. The Farms filed a motion for judgment dismissing ACA's first claim because the Farms argued that it was not required to obtain a permit for non-discharge operations.

The district court granted ACA's motion for a preliminary injunction on limited grounds, requiring only that D.M. Farms formally apply to DENR for an NPDES permit for the MAG 4 facility. J.A. 656. The district court denied D.M. Farms' motion for a judgment of dismissal on ACA's first claim. J.A. 657-58. The district court also granted ACA's motion for partial summary judgment [3] as to their second claim that D.M. Farms violated the CWA by discharging pollutants without an NPDES permit. J.A. 658. Pursuant to the preliminary injunction, on June 7, 1999, D.M. Farms did apply to the North Carolina DENR for an NPDES permit. The DENR has now issued a draft permit to D.M. Farms.

_____

[3] The district court refers to ACA's motion as a "Motion for Judgment," but ACA's motion was for "partial summary judgment." J.A. 497 (ACA's Reply Br. in Support of Their Cross-Motion for Summary Judgment). The district court's grant of ACA's motion on the second claim, despite the ambiguous label used by the district court, does appear to be for partial summary judgment.

5

D.M. Farms now appeals the district court's grant of a preliminary injunction on the first claim and grant of partial summary judgment on the second claim.

II.

D.M. Farms' appeal is interlocutory, and therefore our review is limited to the district court's order granting ACA's preliminary injunction. See 28 U.S.C. § 1292(a) (allowing interlocutory review of orders issuing injunctions). Both D.M. Farms and ACA contend that we also have jurisdiction to review the district court's grant of partial summary judgment on ACA's second claim -- that D.M. Farms violated the CWA when it discharged without a permit. See Appellants' Br. at 1, 11-12; Appellees' Br. at 1. But see Br. of United States at 16-23 (arguing that the partial summary judgment on the second claim is not reviewable on interlocutory appeal). It is clear even from the district court's very brief order, however, that the preliminary injunction was premised only on the first claim-- that D.M. Farms violated the CWA by not obtaining a permit -- not on the second claim. J.A. 655-57 (district court opinion). In fact, the court specifically rejected ACA's request that the preliminary injunction not only require D.M. Farms to apply for a permit, but also require D.M. Farms to operate the MAG 4 facility in compliance with the CWA (i.e. not to discharge in the future absent a permit). J.A. 656 ("[T]he court deems that the relief appropriate at this stage of the litigation is somewhat less broad than that requested by plaintiffs. . . . [T]he court perceives that [ACA is] entitled to an injunction requiring [D.M. Farms] to make formal application to the State of North Carolina for an NPDES permit . . . .").

D.M. Farms appears to argue that the issues underlying plaintiffs' first claim, as to which the district court granted the preliminary injunction, are "intimately bound up with" the issues underlying the second claim, as to which the district court granted partial summary judgment, and therefore that an assertion of pendent interlocutory jurisdiction over the district court's partial summary judgment is warranted. See Appellants' Br. at 12 ("If the summary judgment on the Second Claim should be reversed because there is no ongoing continuous or intermittent discharge, then there also is no threat of immediate irreparable injury that would justify the preliminary injunction.");

6

id. at 11 (citing Fran Welch Real Estate Sales v. Seabrook Island Co., 809 F.2d 1030, 1032 (4th Cir. 1987), in which this court reviewed otherwise unappealable partial dispositions of some of the claims on the merits because they were "intimately bound up with" the denial of the injunction). As best we are able to discern, D.M. Farms' contention in this regard is that the district court's preliminary injunction must have been based upon a conclusion that there would be future discharges, because the district court necessarily found that ACA would be irreparably harmed absent the injunction; the only irreparable harm possible would be that from future discharges; and ACA, in order to prevail on its second claim, was required to prove that the alleged CWA violations were not wholly past violations, see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc. (Gwaltney I), 484 U.S. 49, 66 (1987); Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd. (Gwaltney II), 890 F.2d 690, 693 (4th Cir. 1989), and the district court held that ACA had sufficiently satisfied this burden to warrant partial summary judgment. The failure of this otherwise reasonable syllogism is in its premise, that the district court actually found a likelihood of future discharges. Nothing in the district court's order reflects that it made any finding as to the possibility of future discharge. In fact, the district court did not provide any reasons for its determination that "all four Blackwelder [Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Co., 550 F.2d 189 (1977),] factors weigh strongly in favor of the plaintiffs." J.A. 656 (district court opinion). And, even ACA admits that it has not yet conducted discovery on the risk of possible discharges in the future. See Appellees' Br. at 11 ("Plaintiffs have not yet had the opportunity to conduct the discovery and expert evaluation that is necessary before they take a position on this issue."). Therefore, to the extent the district court did find irreparable harm to justify the preliminary injunction, we are left to infer that the irreparable harm to ACA from D.M. Farms' failure to obtain a permit was merely that ACA would suffer from the absence of any monitoring that would ensue upon a permit application and not that it would likely be exposed to future discharge. Accordingly, we decline to review at this time the district court's partial summary judgment on ACA's second claim that D.M. Farms violated the CWA when it discharged without a permit.

III.

The district court's preliminary injunction ordered D.M. Farms to apply to the North Carolina DENR for an NPDES permit. D.M.

7

Farms appeals from the grant of this preliminary injunction on the grounds that the federally approved state program pursuant to which it operates does not require it to apply for a permit, and neither does the text of the Clean Water Act or its accompanying regulations. Thus, D.M. Farms' claim on appeal presents the narrow question whether the CWA requires a facility that has discharged in the past to apply for a permit even if the federally approved state program pursuant to which it operates does not require such a permit application.

According to both the EPA and the North Carolina DENR however, it appears that D.M. Farms may now be required under the State's program to obtain an NPDES permit irrespective of our resolution of this dispute, due to modifications of the State's program that occurred after this litigation was initiated. See Br. of United States, at 39-40; J.A. 543 (Amicus Curiae Br. of DENR). The DENR now proposes "to require NPDES permits for facilities with 2,500 or more swine . . . with a wet waste treatment system that: 1) experience a documented discharge to the surface waters of the state; and 2) are found to be in violation of the facility's Certified Animal Waste Management Plan." J.A. 543 (Amicus Curiae Br. of DENR). D.M. Farms contains 4,400 swine and has discharged in violation of its Certified Animal Waste Management Plan, and thus would appear subject immediately to permit, a possibility further confirmed by the DENR's statement that "[t]he same types of facilities which experienced discharges in the past, which would include MAG4 , will be issued permits on a case-by-case basis . . . ." Id.

Because there appears to be a reasonable, if not distinct, likelihood of mootness, we believe that the prudent course is to have that question resolved by the district court before proceeding to consider the complex issues presented by this appeal. The district court is in a better position than we to take testimony, if necessary, as to the current status of North Carolina's revised policy and as to the requirements under that policy that would apply to D.M. Farms. Additionally, the district court can evaluate ACA's claims that D.M. Farms has discharged twice during the pendency of this appeal, which for reasons quite obvious would affect not only D.M. Farms' central argument that there has been permanent cure of the source of D.M. Farms' discharge, but also any argument that it may not be required to apply for a permit under the State's new policy.

8

For the reasons stated, we decline to review D.M. Farms' appeal from the district court's grant of partial summary judgment on ACA's second claim, and accordingly, that portion of D.M. Farms' appeal is dismissed. That portion of the district court's judgment relating to the preliminary injunction is remanded to the district court for further proceedings on the question of mootness.

DISMISSED IN PART; REMANDED IN PART

9